FIRST NATIONAL BANK & TRUST CO. OF WILLISTON, as paying agent for the City of Williston under MIDA Bond (LeRoy P. Anseth Project, Series 1982), and First National Bank & Trust Co. of Williston, as bondholder of the MIDA Bond (LeRoy P. Anseth Project, Series 1982), Plaintiff, Appellant and Cross–Appellee,

v.

LeRoy P. ANSETH and Rita L. Anseth, Defendants, Appellees and Cross–Appellants.

Civ. No. 920269.

Supreme Court of North Dakota.

July 14, 1993.

Fred E. Whisenand (argued), of McIntee & Whisenand, P.C., and Al. Wahl (argued), of Bjella, Neff, Rathert, Wahl & Eiken, P.C., Williston, for plaintiff, appellant and cross-appellee.

Janet Holter Zander (argued), of Anseth & Zander, Williston, for defendants, appellees and cross-appellants.

LEVINE, Justice.

First National Bank & Trust Co. of Williston (First National) appeals from a district court summary judgment dismissing its action to enforce guaranties executed by LeRoy P. Anseth and Rita L. Anseth. Anseths cross-appealed from a summary judgment dismissing their counterclaim against First National. We affirm the judgment dismissing the Anseths' counterclaim, we reverse the judgment dismissing First National's action on the Anseths' guaranties and we remand.

In 1982, the Anseths began a transaction under which an office building (the Townsite Building) was to be erected, with financing through MIDA bonds issued by the City of Williston. The City of Williston adopted a resolution authorizing the issuance of MIDA bonds of up to $600,000 for the project. LeRoy Anseth was the sole owner of the vacant lots upon which the Townsite Building was to be constructed. LeRoy Anseth and Rita Anseth conveyed the property upon which the building was to be constructed to the City of Williston by warranty deed.

The City of Williston issued a $600,000 bond by which it promised to pay the principal, plus interest, in equal monthly payments over a fifteen-year payment period commencing January 1, 1983. The bond recited that the issuer and LeRoy Anseth had entered into a lease obligating LeRoy Anseth, as the lessee, to pay as rent amounts sufficient to pay the principal of and interest on the bond as they become due; that the bond is secured by Issuer's mortgage; that the bond is payable solely from revenue derived by the Issuer pursuant to the lease; and that the bond is not a debt of the Issuer.

The City of Williston leased the building to LeRoy Anseth. The lease recited that it was executed in accordance with the Municipal Industrial Development Act, § 40–57–01 *et seq.*, N.D.C.C.; that Lessee was to pay monthly rental payments equal to the principal and interest due on the bond; that rent payments were assigned to the Paying Agent (First National), to which Lessee agreed to pay all payments payable pursuant to the lease; and that Lessee could purchase the project for $100 following full payment of the bond.

First National purchased the MIDA bond for this project and acted as the paying agent for the City of Williston, which enabled First National to receive revenue from the building and to directly credit such revenue to the bond payments as they came due. The City of Williston executed a mortgage on the property to the bondholder, as did LeRoy Anseth and Rita Anseth.

LeRoy Anseth executed a guaranty to First National by which he guarantied payment of the sums due under the bond and lease. It said, in part:

"Section 2.1. Guarantor hereby unconditionally guarantees to Paying Agent for the benefit of the holders of the Bond the full and prompt payment of (i) the principal of and premium, if any, on the Bond when and as the same shall become due, whether at the stated maturity thereof, by acceleration, call for redemption or otherwise, (ii) any interest on the Bond when and as the same shall become due and (iii) all other amounts payable by the Guarantor under the Lease.... In each and every case, Guarantor agrees in the event of failure of Issuer to make the payments described above, to make such payments to Paying Agent. Each and every default in payment of the principal of, premium, if any, or interest on the Bond and all other amounts due and payable under the Lease shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises."

Rita Anseth executed a guaranty to First National by which she guaranteed "the prompt payment when due ... of any and all ... indebtedness and liabilities of whatsoever nature, ..., whether as maker, endorser, guarantor or otherwise" of LeRoy P. Anseth, up to the sum of $600,000.

In 1988, LeRoy Anseth stopped making the payments required by the lease with the City of Williston. First National sued LeRoy Anseth and Rita Anseth to recover under their guaranties, alleging in part:

"XV.

"The Defendants gave the bondholders a mortgage on this leasehold interest as additional security for the MIDA financing however, pursuant to 40–57–18, N.D.C.C., the provisions of Chapter 40–57 are controlling in the remedies for the issuance of MIDA Bonds, and security therefor, and are consequently exempted from the deficiency judgment restrictions

set forth in other provisions of the Century Code."

Anseths answered the complaint, specifically denying "that the Plaintiff is in any way exempted from the deficiency judgment restrictions." Anseths also counterclaimed, alleging that First National defamed "LeRoy P. Anseth as a lawyer"; that First National's filing of three actions—one on the Anseths' guaranties, one for eviction, and one for foreclosure—"was an abuse of process"; that First National's service of process "by certified mail or sheriff's service ... was done with the intent to injure the Defendant's reputation and credit"; that First National's notifications to tenants that rents should be paid to First National, as Anseth was being evicted as lessee of the building, was "done without reasonable or probable cause and done with the intent to embar[r]ass the Defendants and injure their reputation and credit"; and that First National "has discriminatorily dealt with the Defendants in a far more severe and outrageous fashion than it has dealt with similar borrowers under like circumstances."

A judgment was entered that dismissed First National's action on the Anseths' guaranties and required it to comply with §§ 32–19–04, 32–19–06, and 32–19–07, N.D.C.C., "if it desires a deficiency judgment." A judgment was entered that dismissed the Anseths' counterclaim. First National appealed and the Anseths cross-appealed.

The trial court concluded that, because First National received a mortgage on the property, it could not sue directly on the Anseths' guaranties, but must comply with the anti-deficiency judgment statutes, §§ 32–19–04, 32–19–06, and 32–19–07, N.D.C.C. We disagree.

The anti-deficiency statutes ordinarily protect mortgagors from personal liability for any deficiency remaining upon foreclosure of a mortgage. Those statutes do not protect these mortgagors because of other statutes peculiar to the issuance of MIDA bonds and because these mortgagors executed separate guaranties.

Section 32–19–04, N.D.C.C., says:

"In an action for the foreclosure or satisfaction of a mortgage, the complaint shall state whether any proceedings have been had at law or otherwise for the recovery of the debt secured by such mortgage, or any part thereof, and if there have been, whether any and what part thereof has been collected. The plaintiff shall also state in his complaint whether he will in a later and separate action demand judgment for any deficiency which may remain due to him after sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage."

Section 32–19–06, N.D.C.C., says:

"In any action for the foreclosure of a real estate mortgage ..., the court may render judgment for the amount found to be due at the time of the rendition of the judgment, and the costs of the action, and may order and decree a sale of the premises described in the mortgage.... The court may not render a deficiency judgment for any sum whatever against the mortgagor ..., except as hereinafter provided. Where a note or other obligation and a mortgage upon real property have been given to secure a debt contracted after July 1, 1951, and the sale of the mortgaged premises has failed to satisfy in full the sum adjudged to be due and the costs of the action, the plaintiff may, in a separate action, ask for a deficiency judgment, if the plaintiff has so indicated in the complaint, against the party or parties personally liable ... but the deficiency judgment may not be in excess of the amount by which the sum adjudged to be due and the costs of the action exceed the fair value of the mortgaged premises.... In all actions brought for a deficiency judgment ... [ ] no deficiency judgment may be rendered against the party or parties personally liable unless the fair value of the mortgaged premises is determined by the jury to be less than the sum adjudged to be due and the costs of the action...."

Section 32–19–07, N.D.C.C., says:

"... Except as otherwise provided in sections 32–19–04 and 32–19–06, neither

before nor after the rendition of a judgment for the foreclosure of a real estate mortgage ... made after July 1, 1951, shall the mortgagee ..., be authorized or permitted to bring any action in any court in this state for the recovery of any part of the debt secured by the mortgage ... so foreclosed. It is the intent of this section that no deficiency judgment shall be rendered upon any note, mortgage, or contract given after July 1, 1951, to secure the payment of money loaned upon real estate or to secure the purchase price of real estate, and in case of default the holder of a real estate mortgage ... shall be entitled only to a foreclosure of the mortgage ... except as provided by sections 32–19–04 and 32–19–06."

In *First State Bank of Cooperstown v. Ihringer*, 217 N.W.2d 857 (N.D.1974), this court held that, after 1951, a holder of a mortgage securing a real estate loan had three options upon default:

"Thus it is our holding that the legislative intent after the 1951 amendment was that the mortgagee or vendor could either (1) foreclose without asking for a deficiency judgment, or (2) foreclose, asking for a deficiency judgment in a separate action after the sale of the property, and obtain a judgment for only the difference between the mortgage debt plus costs and the fair value determined by a jury against both mortgagors and non-mortgagors personally liable on the note, or (3) sue on the note without foreclosure but with recovery limited to the difference between the amount due on the note plus costs and the fair value of the property determined by a jury."

*Id.* at 864. Because of "the language relating to parties 'personally liable'" in §§ 32–19–04 and 32–19–06, N.D.C.C., the court in *Ihringer* also held that the anti-deficiency judgment statutes' special procedures for obtaining a deficiency judgment also applied "against nonmortgagor debtors as well as mortgagors." *Id.* at 862. Because First National received a mortgage from the Anseths as part of this MIDA bond transaction, the Anseths contend that they are entitled to the protection afforded by the anti-deficiency judgment statutes and

may not be sued directly on their guaranties for the amount of the MIDA bond debt remaining unpaid.

Our anti-deficiency judgment statutes initially comprised a part of the "actions proposed and taken in 1933 by the house, senate, and Governor Langer to deal with the crushing impact of the economy on the agricultural sector." Sarah M. Vogel, *The Law of Hard Times: Debtor and Farmer Relief Actions of the 1933 North Dakota Legislative Session*, 60 N.D.L.Rev. 489, 490 (1984). "The North Dakota senate introduced and enacted into law a number of bills designed to aid the farmer." *Id.* at 494. One of them, Senate Bill 3 (N.D.S.L. 1933, Ch. 155), prohibited deficiency judgments in foreclosure actions. In *Burrows v. Paulson*, 64 N.D. 557, 254 N.W. 471 (1934), this court held that Chapter 155 "forbade the court in a foreclosure action from rendering a deficiency judgment while allowing mortgagees to bring separate actions at law to recover the deficiency." 60 N.D.L.Rev. at 507.

"To the Non–Partisan League legislators, this result must have been upsetting. As a reaction to the case, the legislature adopted a new anti deficiency statute in 1937. The language of the statute makes it plain that the 1937 legislature did not intend to allow the supreme court to again misconstrue the legislature's intent. In section 1 of chapter 159 of the 1937 session laws, the legislature stated that 'the Court shall under no circumstances have power to render a deficiency judgment for any sum whatever.' Sections 2, 3, and 4 of the statute reemphasized that point.

"... the 1937 legislature apparently accomplished its objective, since the law was not challenged in the courts and survived until 1951, when it was amended to permit deficiency judgments under limited circumstances."

60 N.D.L.Rev. at 508–09. The 1951 amendments, allowing deficiency judgments in limited circumstances, created what is substantially our present law in §§ 32–19–04, 32–19–06, and 32–19–07, N.D.C.C. The 1951 amendments "were made because the

Federal Land Bank, one of the principal lenders in the State, was refusing to make loans unless deficiency judgments were permitted." *First State Bank of Cooperstown v. Ihringer, supra,* 217 N.W.2d at 859.

Our resolution of this case turns on two strands of analysis—Anseths' guaranties are not subject to the anti-deficiency statutes, and the specific MIDA bond chapter of the North Dakota Century Code is not subject to the general anti-deficiency statutes—either of which is sufficient to require reversal of the trial court's dismissal of First National's action.

Our decision in this case is governed by analysis of this court's decision in *Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640 (N.D.1980), that the anti-deficiency judgment statutes do not preclude recovery from a guarantor of a promissory note. In that case, Develco, Inc., executed three promissory notes to the Bank and secured them with mortgages on three homes. The Bank brought foreclosure actions on the mortgages and sued the guarantors on their guaranty agreement. The guarantors contended that the action was barred by the anti-deficiency statutes. This court held that the action against the guarantors was not barred:

> "The action in the instant case against the guarantors, ..., is not based on obligations imposed by the notes or the mortgages given to secure the notes; but on a separate and distinct contract of guaranty....
>
> "Thus, although the guarantors may be required to pay the notes in the instant case, the liability is not predicated on the notes or the mortgages, as in *Ihringer,* but on the separate contract of guaranty.
>
> \* \* \* \* \* \*

"Secondly, although the intent may be clear from the language of North Dakota's anti-deficiency statutes that non-mortgagor debtors are covered within the scope of the statute, it is not clear that guarantors were also meant to be covered. We will not extend the scope of the anti-deficiency statutes beyond that which is clear from the statute. *Fetzer v. Minot Park District,* 138 N.W.2d 601 (N.D.1965). The Legislature may, if it wishes, include guarantors within the protection of the anti-deficiency statutes. It has not done so."

294 N.W.2d at 643.

■ Under § 22–01–01, N.D.C.C., a "guaranty" is "a promise to answer for the debt, default, or miscarriage of another person." Because the MIDA bond issued by the City of Williston provides that it is payable solely from revenue derived by Williston from its lease of the project to LeRoy Anseth and also provides that the bond is not a debt of the issuer,[1] there is no party that is "personally liable", as contemplated by §§ 32–19–04 and 32–19–06, N.D.C.C. LeRoy Anseth's guaranty, however, is a promise to answer for the default of another. His guaranty "unconditionally guarantees ... full and prompt payment" of the bond, principal, if any, and interest on the bond. It further provides: "Guarantor agrees in the event of failure of Issuer to make the payments described above, to make such payments to Paying Agent. Each and every default in payment ... shall give rise to a separate cause of action hereunder." Rita Anseth's guaranty is a promise to answer for the debt or default of LeRoy Anseth. Her guaranty guarantied "the prompt payment ... of any and all ... indebtedness and liabilities ... whether as maker, endorser, guarantor or otherwise" of LeRoy Anseth. Because the Anseths' guaranties constitute obligations separate and distinct from the bond

---

**1.** With an exception not relevant here, § 40–57–03, N.D.C.C., provides: "No debt on the general credit of the municipality may be incurred in any manner for any purpose under this chapter." With an exception not relevant here, § 40–57–14, N.D.C.C., provides: "Nothing ... in this chapter ... shall authorize any municipality to do anything or for any purpose which

would result in the creation or incurring of a debt or indebtedness." Section 40–57–15, N.D.C.C., provides: "Revenue bonds issued under this chapter shall not be payable from nor charged upon any funds other than the revenue pledged to the payment thereof, nor shall the municipality issuing the same be subject to any liability thereon."

itself, we conclude that First National may enforce those guaranties by suing on them, without regard to the anti-deficiency statutes, which are not applicable to these guaranties. *Bank of Kirkwood Plaza v. Mueller, supra.*

 Our conclusion that the Anseths' guaranties are not subject to the anti-deficiency statutes is also required by analysis of provisions in Chapter 40–57, N.D.C.C. That chapter is a comprehensive statute dealing with one particular subject—MIDA bonds. It authorizes the issuance of MIDA bonds, specifies the projects for which they may be issued, specifies provisions that must be included, and provides remedies for bondholders. Special provisions in Ch. 40–57, N.D.C.C., prevail over conflicting general provisions, such as the anti-deficiency judgment statutes. Section 1–02–07, N.D.C.C. In particular, § 40–57–16, N.D.C.C., specifies certain remedies for bondholders and also specifically provides:

"No right or remedy conferred by this chapter upon any bondholder, or upon any trustee therefor, is intended to be exclusive of any other right or remedy, but each such right or remedy is cumulative and in addition to every other right or remedy and may be exercised without exhausting and without regard to any other remedy conferred by this chapter, or by any other law in this state."

Thus, a bondholder may enforce any remedy it has, without regard to "any other law", including the anti-deficiency statutes. *See also* § 40–57–18, N.D.C.C., which says, in part: "Insofar as the provisions of this chapter are inconsistent with any other law of this state, the provisions of this chapter shall be controlling with reference to the issuance of revenue bonds and the security therefor."

Our conclusion in this case and in *Bank of Kirkwood Plaza v. Mueller, supra,* that a guarantor of another's debt or default is not protected by the anti-deficiency statutes, is further supported by recent legislative action. In *Mueller,* we held that a guarantor was not protected by the anti-deficiency statutes and said that the Legislature could extend the protection of the

anti-deficiency statutes to guarantors if it chose to do so. In *Mandan Security Bank v. Heinsohn,* 320 N.W.2d 494 (N.D.1982), a majority of this court held that recovery on a general partner's guaranty of a partnership debt was not precluded by the anti-deficiency statutes. In *First Interstate Bank of Fargo v. Larson,* 475 N.W.2d 538 (N.D.1991), a majority of this court overruled *Heinsohn* and held that "when general partners personally guaranty a general partnership mortgage debt, the anti-deficiency statutes are applicable, and that the procedures for deficiency judgments outlined in *First State Bank of Cooperstown v. Ihringer* must be satisfied." 475 N.W.2d at 544. We observed that "a partner's guaranty of a partnership debt is not a separate obligation." *Id.* at 544. The 1993 Legislature passed Senate Bill 2429, which inserts the following sentence in § 22–01–12, N.D.C.C.:

"A stockholder or partner of any entity, including a limited liability company, business corporation, professional corporation, and partnership, may enter into a separate contract of guaranty for the real estate mortgage debt of the entity."

The bill also adds the following sentence to § 45–06–07, N.D.C.C.:

"A partner is severally liable for a partnership real estate mortgage debt for which that partner has given a separate guaranty to a lender."

As a result of the passage of Senate Bill 2429, a partner's guaranty of a partnership's mortgage debt is once again deemed to be a different obligation than the partnership's debt and is not affected by the anti-deficiency statutes. Thus, rather than adding guarantors to those protected by the anti-deficiency statutes, as this court suggested it could do in *Mueller,* the Legislature has removed anti-deficiency protection from a group—partners guarantying partnership debt—that this court had previously held was protected. The Legislature has clearly signaled an intent not to protect guarantors with the anti-deficiency statutes.

We conclude that the district court erred in dismissing First National's action on the

Anseths' guaranties and ordering compliance with the anti-deficiency statutes.

Anseths contend that the trial court erred in entering a summary judgment dismissing their counterclaim. No productive purpose would be served by individually addressing each of the allegations in the counterclaim. It is enough to observe that all of First National's acts challenged by Anseths were either privileged or such that no reasonable person would find defamatory or abusive of process, thus rendering summary judgment appropriate.

The judgment dismissing the Anseths' counterclaim is affirmed. The judgment dismissing First National's action on the Anseths' guaranties and requiring compliance with the anti-deficiency statutes is reversed and the matter is remanded for further proceedings, if necessary, and the entry of judgment in accordance with this opinion.

NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

VANDE WALLE, J., concurs in the result.