**STATE of North Dakota, doing business as the Bank of North Dakota, Plaintiff, Appellant, and Cross–Appellee,**

v.

**Harlan C. LARSEN, Walter C. Hanewald, Dennis E. Wolf, Adel A.F. Hassan, Dana R. Day, and James E. Slowey, individually and jointly and severally as personal guarantors, and as partners of R & G Medical Arts and Surgical Center, Defendants,**

**Adel A.F. Hassan, and James E. Slowey, Appellees and Cross–Appellants.**

Civ. No. 930183.

Supreme Court of North Dakota.

April 20, 1994.

Douglas Alan Bahr (argued), Asst. Atty. Gen., Attorney General's Office, Bismarck, for plaintiff, appellant, and cross-appellee.

Vince Ficek, of Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for appellee and cross-appellant Adel A.F. Hassan. Submitted on briefs.

Robert O. Wefald (argued), of Wefald Law Office, Ltd., Bismarck, for appellee and cross-appellant James E. Slowey.

LEVINE, Justice.

The State of North Dakota, doing business as the Bank of North Dakota (the Bank), appeals from a district court judgment dismissing with prejudice its action to enforce a guaranty executed by Harlan C. Larsen, Walter C. Hanewald, Dennis E. Wolf, Adel A.F. Hassan, Dana R. Day, and James E. Slowey (Guarantors). We reverse and remand for entry of judgment.

In 1981, the City of Dickinson (City) proposed to acquire and improve real estate in connection with a medical and surgical facility (Project), to be leased to R & G Medical Arts and Surgical Center, a partnership (Lessee). Under Ch. 40–57, N.D.C.C., the City proposed to finance the venture with a $2,500,000 issuance of municipal industrial development revenue bonds, which were payable solely from revenues pledged to their repayment and did not constitute a debt of the City.

The City and the Lessee executed a lease dated September 1, 1981, for a term ending "September 1, 2001, or until such time as the Bonds shall have been fully paid or provision made for such payment, whichever shall be later." The lease gave the City a security interest in the Project site, building, and

goods purchased with bond sale proceeds. It required the Lessee to purchase the Project for $100 "and any and all sums then due to [City] under this Lease, at the expiration or sooner termination of the Lease."

Also on September 1, 1981, the Guarantors, who were partners in R & G Medical Arts and Surgical Center, and the Bank executed a guaranty agreement. The guaranty recited consideration for the Guarantors' guaranties:

"WHEREAS, Guarantors are desirous that Issuer issue the Bonds and apply the proceeds as aforesaid and are willing to enter into this Guaranty in order to enhance the marketability of the Bonds and thereby achieve interest cost and other savings to Guarantors and to induce Bank of North Dakota, Bismarck, North Dakota ('Purchaser') to purchase the Bonds."

The guaranty agreement provided that the Guarantors unconditionally guarantied payment of the principal of and premium, if any, on the bonds, interest on the bonds, and all other amounts payable under the lease and indenture. The guaranty agreement further said:

"Section 2.2. The obligations of Guarantors under this personal, joint and several Guaranty shall be absolute and unconditional and shall remain in full force and effect until the entire principal of, premium, if any, and interest on the Bonds and all other amounts due and payable under the Lease or Indenture shall have been paid or provided for, ...

\*　　\*　　\*　　\*　　\*　　\*

"Section 2.4. In the event of a default ..., Trustee [The Bank] ... shall have the right to proceed first and directly against Guarantors under this Guaranty without proceeding against or exhausting any other remedies which it may have and without resorting to any other security held by Issuer or Trustee."

The Bank advanced $2,500,000 for construction of the medical and surgical facility and became a holder of the bonds.

Alleging Lessee's "failure to make the required rental payment due on August 25, 1990," the Bank sued the Guarantors under the guaranty agreement, seeking "judgment against the defendants, individually and jointly and severally, in the amount of $1,610,000." The Bank also brought a foreclosure action. When the foreclosure action was settled and dismissed, the Bank moved to dismiss this guaranty action without prejudice on the ground that the default had been cured. Slowey and Hassan resisted the motion and moved to dismiss with prejudice, which the district court treated as a request for a declaratory judgment.

The district court found that "the prayer for relief submitted by Hassan and Slowey applies to Day as well," although Day had filed a bankruptcy petition. The court found that Larsen, Hanewald, and Wolf had not responded to the State's motion to dismiss and were in default. The court found that in 1986, Slowey and Day terminated their partnership interests in R & G Medical Arts and Surgical Center and "Hassan was a partner in name only." The court found that Hassan did not consent to a 1987 work-out agreement negotiated upon a 1986 default in payment or to the restructuring agreement between the Bank and the three remaining R & G partners (Larsen, Hanewald, and Wolf) that led to the dismissal of the foreclosure action.

The district court concluded that the guaranty agreement was void for lack of consideration and that the anti-deficiency judgment statutes limited the Bank's recovery to foreclosure of the mortgage given to secure payment of the debt. A judgment was entered granting Day, Slowey, and Hassan dismissal of the action with prejudice. An amended judgment was entered that dismissed the action against Day, Slowey, and Hassan with prejudice and dismissed the action against Larsen, Hanewald, and Wolf without prejudice.

The Bank appealed, contending that the district court erred in concluding that the guaranty agreement failed for lack of consideration and in limiting it to foreclosure. Slowey cross-appealed, contending that the district court erred in failing "to base its decision on the fact that the workout between the plaintiff and the remaining defendants constituted a satisfaction of the guar-

antee under Section 2.2 in that the workout released the guarantee in that the bonds had been 'provided for.'"

The district court's conclusions of law do not clearly state the grounds for its conclusion that the guaranty agreement is void for lack of consideration. We believe the court rested its conclusion on two bases: (1) the Guarantors received nothing for executing the guaranty; (2) the court's reference to *First Interstate Bank v. Larson*, 475 N.W.2d 538 (N.D.1991), indicates that the court believed that the partners' guaranty of a partnership debt was not a separate obligation.

■■■ We disagree with the court's conclusion that the guaranty agreement was void for lack of consideration. The existence of consideration is a question of law. *Maragos v. Norwest Bank Minnesota, N.A.*, 507 N.W.2d 562 (N.D.1993); *Estate of Jorstad*, 447 N.W.2d 283 (N.D.1989). Under § 9–05–10, N.D.C.C., "[a] written instrument is presumptive evidence of a consideration." Furthermore, there was consideration in fact under § 9–05–01, N.D.C.C.,[1] and § 22–01–03, N.D.C.C.[2] As the guaranty agreement itself recites, the Guarantors desired that City issue the bonds and apply the proceeds to the Project and executed the guaranty "to enhance the marketability of the Bonds and thereby achieve interest cost and other savings to Guarantors and to induce Bank of North Dakota ... to purchase the Bonds." With the execution of the guaranty, which occurred at the same time as the original obligation, the Guarantors induced the Bank of North Dakota to purchase the bonds and benefited from interest cost savings as a result.

■ We also disagree with the court's second basis for concluding that the guaranty agreement was void for lack of consideration. "A 'guaranty' means a promise to answer for the debt, default, or miscarriage of another person." Section 22–01–01(2), N.D.C.C. In *First Interstate Bank v. Larson, supra*, 475 N.W.2d at 544, a majority of this court concluded "that when general partners personally guaranty a general partnership mortgage debt, the anti-deficiency statutes are applicable, and that the procedures for deficiency judgments outlined in *First State Bank of Cooperstown v. Ihringer* [217 N.W.2d 857 (N.D.1974) ] must be satisfied." However, this court specifically held that the decision in *First Interstate Bank v. Larson* should be given prospective effect only. Thus, the 1981 guaranty agreement involved in this case is not affected by *First Interstate Bank v. Larson*. We note that the 1993 Legislature effectively overruled this court's decision in *First Interstate Bank v. Larson*. See *First National Bank and Trust Co. v. Anseth*, 503 N.W.2d 568, 573 (N.D.1993), where we said, among other things, that with the 1993 Legislature's passage of Senate Bill 2429, "a partner's guaranty of a partnership's mortgage debt is once again deemed to be a different obligation than the partnership's debt and is not affected by the anti-deficiency statutes."

We conclude that the guaranty agreement was supported by consideration.

■ Even if *Larson* did apply retroactively, it would not apply to this guaranty agreement between the Bank, as the Trustee and holder of MIDA bonds, and the Guarantors, who guarantied payment of the bonds. Our recent decision in *First National Bank and Trust Co. v. Anseth, supra*, is dispositive. In that case, we held that the holder of a MIDA bond could enforce a guaranty without regard to the anti-deficiency judgment statutes because there was no party that was personally liable for payment of the bond, as contemplated by §§ 32–19–04 and 32–19–06,

---

1. *"9–05–01. Good consideration defined.* Any benefit conferred or agreed to be conferred upon the promisor by any other person to which the promisor is not entitled lawfully, or any prejudice suffered or agreed to be suffered by such person, other than such as he, at the time of consent, is lawfully bound to suffer as an inducement to the promisor, is a good consideration for a promise."

2. *"22–01–03. Original obligation sufficient consideration—Exception.* When a guaranty is entered into at the same time as the original obligation or at the same time as the acceptance of the original obligation by the guarantee and forms, with that obligation, a part of the consideration to the guarantee, no other consideration is necessary. In all other cases there must be a consideration distinct from that of the original obligation."

N.D.C.C., which are anti-deficiency judgment statutes. The anti-deficiency judgment statutes provide protections for persons who are personally liable for debts secured by mortgages. Here, as in *Anseth*, there is no party that is personally liable for payment of the bonds. The MIDA bonds issued by the City provide that they are payable solely from revenues pledged to their repayment, to be derived from the lease of the project to the partnership, and also provide that they are not a debt of the City. As in *Anseth, supra,* 503 N.W.2d at 572, "there is no party that is 'personally liable', as contemplated by §§ 32–19–04 and 32–19–06, N.D.C.C." and the Bank may enforce the guaranty without regard to the anti-deficiency statutes. We also held in *Anseth* that a holder of a MIDA bond could enforce a guaranty without regard to the anti-deficiency statutes because of statutes peculiar to MIDA bonds:

> "Our conclusion that the Anseths' guaranties are not subject to the anti-deficiency statutes is also required by analysis of provisions in Chapter 40–57, N.D.C.C. That chapter is a comprehensive statute dealing with one particular subject— MIDA bonds. It authorizes the issuance of MIDA bonds, specifies the projects for which they may be issued, specifies provisions that must be included, and provides remedies for bondholders. Special provisions in Ch. 40–57, N.D.C.C., prevail over conflicting general provisions, such as the anti-deficiency judgment statutes. Section 1–02–07, N.D.C.C. In particular, § 40–57–16, N.D.C.C., specifies certain remedies for bondholders and also specifically provides:
> " 'No right or remedy conferred by this chapter upon any bondholder, or upon any trustee therefor, is intended to be exclusive of any other right or remedy, but each such right or remedy is cumulative and in addition to every other right or remedy and may be exercised without exhausting and without regard to any other remedy conferred by this chapter, or by any other law in this state.'
> "Thus, a bondholder may enforce any remedy it has, without regard to 'any other law', including the anti-deficiency statutes. *See also* § 40–57–18, N.D.C.C., which says,

in part: 'Insofar as the provisions of this chapter are inconsistent with any other law of this state, the provisions of this chapter shall be controlling with reference to the issuance of revenue bonds and the security therefor.' "

*Anseth,* 503 N.W.2d at 573. *Anseth* was decided after the judgment of dismissal was entered in this case. On appeal, Hassan did not address *Anseth.* Slowey argued that the Bank cannot rely on *Anseth* because the Bank did not raise the matter of MIDA bond statutes in the proceedings in district court. The Bank cited *Anseth* in its reply brief as additional support for its position.

■ We must apply *Anseth* to decide this case. We have a duty to conduct appellate review "in light of all relevant precedents, not simply those cited to or discovered by the district court." *Elder v. Holloway,* 510 U.S. ——, ——, 114 S.Ct. 1019, 1021, 127 L.Ed.2d 344, 348 (1994). Otherwise, decisions might turn on "shortages in counsels' or the court's legal research or briefing", *id.,* at ——, 114 S.Ct. at 1023, 127 L.Ed.2d at 350, and "could occasion appellate affirmation of incorrect legal results." *Id.,* n. 3. Therefore, we apply *Anseth* and hold that the Bank is entitled to enforce the guaranty agreement without regard to the anti-deficiency judgment statutes.

■ As to Slowey's contention on cross-appeal that the court should have decided that "the workout between the plaintiff and the remaining defendants constituted a satisfaction of the guarantee under Section 2.2," we agree with the trial court's conclusion of law:

> "The Guaranty Agreement dated September 1, 1981, was a continuing and unconditional agreement of guaranty as reflected in Article II of said agreement. As such, the Guaranty Agreement would allow the Plaintiff to enter into work-out agreements as entered into in 1986 and 1991, and yet preserve the liability of the guarantors herein."

■ Except for costs allowed under Rule 39, N.D.R.App.P., we deny the Bank's request for costs, expenses, and fees, including attorney fees, because it was not adequately developed or argued below.

The judgment is reversed and the matter is remanded for entry of a judgment granting the Bank's motion to dismiss without prejudice.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.