Filed 10/18/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 205

Alerus Financial, N.A., Plaintiff and Appellee

v.

The Marcil Group Inc., 

a North Dakota Corporation, 

Michael J. Marcil, an individual, 

and Arthur S. Rosenberg, an individual, Defendants and Appellants

No. 20110113

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Wickham Corwin, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

John Stephen Foster, P.O. Box 13417, Grand Forks, N.D. 58208-3417, for plaintiff and appellee.

Joel Matthew Fremstad, P.O. Box 3143, Fargo, N.D. 58108, for defendants and appellants.

Alerus Financial, N.A. v. The Marcil Group, Inc.

No. 20110113

Sandstrom, Justice.

[¶1] The Marcil Group, Inc. (“TMGI”), Michael J. Marcil, and Arthur S. Rosenberg appeal from a judgment awarding Alerus Financial, N.A., $2,520,383.07 based on guaranties they had given Alerus for a commercial real estate loan made to KRE, LLC.  We affirm the judgment against TMGI and Marcil, concluding the district court correctly interpreted the law, correctly ruled there are no genuine issues of material fact precluding summary judgment, and did not abuse its discretion in denying their motion for additional time to conduct discovery.

I

[¶2] In November 2008, KRE received a $2,600,000 loan from Alerus to purchase commercial real estate in Fargo.  Marcil and Rosenberg are respectively the chief executive officer and president of TMGI, which holds 51 percent of KRE’s stock.  KRE granted Alerus a first mortgage against the property purchased with the loan proceeds.  TMGI, Marcil, and Rosenberg individually executed separate documents guaranteeing KRE’s debt.  Each guaranty contract provided in part:

2.  SPECIFIC AND FUTURE DEBT GUARANTY.  For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys’ fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

A promissory note or other agreement, No. 759848001, dated November 14, 2008, from KRE LLC (Borrower) to you, in the amount of $2,600,000.00.

. . . .

4.  UNCONDITIONAL LIABILITY.  I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property.  You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt.  My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt.  My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower.  I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

[¶3] In 2010, KRE defaulted on the promissory note.  Alerus declared the entire balance of the loan due, commenced a foreclosure action against KRE, and indicated it would not seek a deficiency judgment against KRE but would instead pursue its available remedies against the guarantors.  In January 2011, the district court granted Alerus’s motion for summary judgment in the foreclosure action against KRE and scheduled a sheriff’s sale of the property for early March 2011.  KRE filed for bankruptcy shortly before the scheduled sale, and the sheriff’s sale was cancelled.

[¶4] During this time, Alerus had also begun a separate action against TMGI, Marcil, and Rosenberg to enforce the guaranties.  In their answer to the complaint, the guarantors specifically alleged that Alerus’s “separate action on the guaranty is contrary to the plain language and requirements of [the provisions for deficiency judgments on commercial real property in] N.D.C.C. § 32-19-06.1” and that “it was the intention and agreement of the parties that [T]MGI be the primary guarantor and that Marcil and Rosenberg be secondary guarantors.”  The guarantors also alleged in their answer that they “preserve and reserve any and all defenses, affirmative defenses, claims, counterclaims, and third party claims available to it, including but not limited to waiver, estoppel, duress, failure of consideration, fraud, illegality, unconscionability, payment, release, novation, election of remedies, unclean hands, splitting one’s cause of action, and failure to comply with N.D.C.C. § 32-19, pending further discovery and investigation.”

[¶5] After Alerus moved for summary judgment, the guarantors moved to dismiss the action on the grounds that Alerus “has failed to comply with [N.D.C.C. § 32-19-

06.1] and has otherwise unlawfully split its cause of action.”  In response to the summary judgment motion, the guarantors argued that summary judgment should be granted in their favor and, alternatively, that “the pending motion be denied on the basis of existing questions of material fact and/or to allow additional discovery.”  Marcil and Rosenberg also submitted virtually identical affidavits stating:

3. Before and during the time periods in question, I was involved with efforts to obtain literally tens of millions of dollars of financing for The Marcil Group.  While I was agreeable to acting as a guarantor in these transactions, it was always my understanding that The Marcil Group would be primarily liable and that I would be secondarily liable.  After initial discussions would be had with lenders by Mr. Kinzel, myself and/or Arthur Rosenberg, would generally meet with representatives of the lender in an effort to “seal” the deal.  During these meetings, myself and/or Arthur Rosenberg would generally discuss the operations of The Marcil Group and the willingness of myself and/or Arthur Rosenberg to be secondarily liable.

4. As a person signing literally hundreds of different loan documents, I rely on the lender to be fair and accurate in presenting such documents to me for signature.  I would not have agreed to sign the guaranties from Alerus had I understood that not only was I considered primarily liable, but that Alerus could sue me without even first having to sell the underlying property and giving credit to the guarantors for the fair market value of the building.

[¶6] The district court granted Alerus’s summary judgment motion and denied the guarantors’ motion to dismiss.  The court concluded there were no genuine issues of material fact and held TMGI, Marcil, and Rosenberg jointly and severally liable for $2,520,383.07 under the terms of their guaranties.  In June 2011, while this appeal was pending, Rosenberg filed for bankruptcy.  Rosenberg’s appeal is stayed pending discharge of his bankruptcy proceedings.

[¶7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  TMGI and Marcil’s appeal is timely under N.D.R.App.P. 4(a).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28-27-

01.

II

[¶8] TMGI and Marcil argue the district court erred in granting summary judgment in favor of Alerus enforcing their individual guaranties.

[¶9] The standard for summary judgment is well-established:

“‘Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.’”

First Int’l Bank & Trust v. Peterson
, 2011 ND 87, ¶ 7, 797 N.W.2d 316 (quoting 
Lucas v. Riverside Park Condo. Unit Owners Ass’n
, 2009 ND 217, ¶ 16, 776 N.W.2d 801).

A

[¶10] TMGI and Marcil argue the district court erred in refusing to dismiss Alerus’s action because it failed to comply with the provisions of N.D.C.C. § 32-19-06.1, which governs deficiency judgments on commercial property.  The district court ruled the statute did not apply to Alerus’s action to enforce the individual guaranties.

[¶11] Section 32-19-06.1, N.D.C.C., provides:

In an action involving the foreclosure of a mortgage on commercial real property, the plaintiff shall state in the pleading whether a deficiency judgment will be sought and if sought shall identify the parties claimed to be personally liable and demand a deficiency judgment against those parties.  Within twenty days after the completion of the appraisal, the appraiser shall provide the plaintiff and file with the clerk of court a written report, including the fair market value of the property.  The plaintiff shall mail a copy of the appraisal to a party that may be personally liable at the party’s last-known residences or business addresses by first-class mail.  At the time of the entry of the judgment, the court shall include in its findings of fact the fair market value of the property and the amount of any prior liens on the property.  If the fair market value and the amount of any prior liens are less than the amount found to be due to the plaintiff, the court shall identify each person who is liable for any deficiency after the sheriff’s sale.  The foreclosure judgment must be the balance then due and owing on the mortgage, plus costs.  Upon entry of an order confirming the sheriff’s sale, the clerk of court shall note the amount bid at the sheriff’s sale, less the cost of the sheriff’s sale as a credit on the foreclosure judgment, which credit may not be less than the fair market value established by the court.  Any amount actually paid in excess of the foreclosure judgment constitutes surplus payable to the debtor pursuant to section 28-23-09.  The clerk shall enter a money judgment to the extent of the deficiency against those parties found by the court to be personally liable, then the plaintiff may pursue the same remedies to collect the deficiency judgment as are available to collect other money judgments.  The deficiency judgment must be for the entire amount found to be due the foreclosing party in the foreclosure judgment, together with interest at the rate provided in the note secured by the mortgage, less the amount credited by the clerk of court.  In addition to the appraisal, the court in its determination of the fair market value of the property may consider affidavits from the parties or other proof of paramount liens and other matters that may affect the value.

[¶12] TMGI and Marcil point out that unlike N.D.C.C. § 32-19-06 (emphasis added), which governs “any action 
for
 the foreclosure” of real estate mortgages in general, N.D.C.C. § 32-19-06.1 (emphasis added), governs an “action 
involving
 the foreclosure of a mortgage” on real property.  TMGI and Marcil contend the Legislature’s use of the “expansive term ‘involving’ clearly indicates the procedures set forth in § 32-19-06.1 are not limited solely to foreclosure actions” but also apply to Alerus’s action to enforce the guaranties.  TMGI and Marcil argue Alerus is essentially seeking a deficiency judgment against them, and Alerus’s failure to follow the procedures set forth in the statute warranted dismissal of the action.

[¶13] “Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears.”  N.D.C.C. § 1-02-02.  In 
State v. Erickson
, 534 N.W.2d 804, 807 (N.D. 1995), we explained:

The commonly understood meaning of “involve” is “to include as a necessary circumstance, condition, or consequence; . . . .”  
Random House Dictionary of the English Language
, 1005 (2d ed. 1987).  “Involving” is not limited to engaging in the activity.  It merely requires the activity to be a necessary condition or circumstance.

An action to enforce a guaranty is not a necessary circumstance, condition, or consequence of an action to foreclose a commercial real estate mortgage.  In holding guarantors are not within the protection of the general anti-deficiency judgment statute, N.D.C.C. § 32-19-06, this Court has long observed that a guarantor’s liability is premised on a separate and distinct contract of guaranty rather than on any obligations imposed by the notes and mortgages subject to a foreclosure action.  
See, e.g.
, 
First Nat’l Bank & Trust Co. v. Anseth
, 503 N.W.2d 568, 572-73 (N.D. 1993); 
Dakota Bank & Trust Co. v. Grinde
, 422 N.W.2d 813, 817 (N.D. 1988); 
H & F Hogs v. Huwe
, 368 N.W.2d 553, 555 (N.D. 1985); 
Bank of Kirkwood Plaza v. Mueller
, 294 N.W.2d 640, 643 (N.D. 1980).  While financial institutions might often demand a separate guaranty of a debt secured by a mortgage as a matter of sound business practice, we know of no requirement in the law that they do so.

[¶14] We also harmonize statutes to give meaning to related provisions, and we give consideration to the context of statutes and the purpose for which they were enacted. 
See
 N.D.C.C. § 1-02-07; 
Comstock Constr., Inc. v. Sheyenne Disposal, Inc.
, 2002 ND 141, ¶ 22, 651 N.W.2d 656.  In 
Mueller
, 294 N.W.2d at 643, this Court ruled that a guarantor was not a “party . . . personally liable for . . . the debt” within the meaning of N.D.C.C. § 32-19-06.  After noting the distinction between the liability of a guarantor and the liability of the primary obligor on the note, the Court said:

[A]lthough the intent may be clear from the language of North Dakota’s anti-deficiency statutes that non-mortgagor debtors are covered within the scope of the statute, it is not clear that guarantors were also meant to be covered.  We will not extend the scope of the anti-deficiency statutes beyond that which is clear from the statute.  
Fetzer v. Minot Park District
, 138 N.W.2d 601 (N.D. 1965).  The Legislature may, if it wishes, include guarantors within the protection of the anti-

deficiency statutes.  It has not done so.

Mueller
, at 643.  In 
Anseth
, 503 N.W.2d at 573, this Court reaffirmed the conclusion that guarantors are not protected by the general anti-deficiency judgment statutes.  The Court noted that the Legislature in 1993 had amended statutes to make a partner’s guaranty of a partnership mortgage debt a different obligation than the partnership’s debt which is not affected by the anti-deficiency judgment statutes, effectively superseding this Court’s decision in 
First Interstate Bank v. Larson
, 475 N.W.2d 538, 544 (N.D. 1991).  
Anseth
, at 573.  The Court observed:

Thus, rather than adding guarantors to those protected by the anti-

deficiency statutes, as this court suggested it could do in 
Mueller
, the Legislature has removed anti-deficiency protection from a group—partners guarantying partnership debt—that this court had previously held was protected.  The Legislature has clearly signaled an intent not to protect guarantors with the anti-deficiency statutes.

Id.

[¶15] Section 32-19-06.1, N.D.C.C., was also enacted by the Legislature in 1993.  
See
 1993 N.D. Sess. Laws ch. 342, § 1.  As originally enacted, the statute contained the phrases, “action 
for
 the foreclosure” of a commercial real estate mortgage and “defendant or defendants 
claimed to be personally liable
 for the amount due.”  
Id.
 (emphasis added).  This language essentially tracks the language contained in N.D.C.C. § 32-19-06, which this Court ruled in 
Mueller
, 294 N.W.2d at 643, did not afford guarantors the protection of the anti-deficiency judgment statutes.  The legislative history reveals that the provision was intended to lessen the risks to financial institutions in making commercial real estate loans and “increase the pool of funding in our effort to create jobs in North Dakota.”  
Hearing on H.B. 1258 Before the House Industry, Business and Labor Comm.
, 53rd N.D. Legis. Sess. (Jan. 20, 1993) (written testimony of Rep. Gary Porter).  In 1995 the Legislature amended the statute in part by replacing the word “for” with the word “involving” to preface the phrase, “the foreclosure of a mortgage on commercial real property.”  1995 N.D. Sess. Laws ch. 330, § 1.  The legislative history reflects that the 1995 changes to the statute were “technical amendments” and “[n]o rights are being changed.”  
Hearing on S.B. 2352 Before the Senate Industry, Business and Labor Comm.
, 54th N.D. Legis. Sess. (Jan. 23, 1995) (testimony of Jim Schlosser, North Dakota Bankers Association).  Although a change in an original law is presumed to indicate an intent to change the law, the change must be a “material change.”  
RECALLND v. Jaeger
, 2010 ND 250, ¶ 17, 792 N.W.2d 511.  This technical amendment was not a material change in the law.  We have reviewed the legislative history underlying the 1993 enactment of N.D.C.C. § 32-19-06.1 and its 1995 amendments, and have not found anything that remotely suggests guarantors of commercial real estate loans were intended to be afforded the protections of the anti-deficiency judgment provisions of N.D.C.C. § 32-19-06.1.

[¶16] Because of the plain language of N.D.C.C. § 32-19-06.1, TMGI and Marcil’s reliance on decisions from other jurisdictions is unpersuasive.  We conclude guarantors of commercial real estate loans are not afforded the protections of the anti-

deficiency judgment statutes, and the district court did not err in ruling N.D.C.C. § 32-19-06.1 is inapplicable in this case.

B

[¶17] TMGI and Marcil argue Alerus has impermissibly split its cause of action by bringing an action to enforce the guaranties separately from its foreclosure action against KRE.

[¶18] In 
Hildenbrand v. Capital RV Ctr., Inc.
, 2011 ND 37, ¶ 13, 794 N.W.2d 733, this Court explained:

“The rule against splitting causes of action exists mainly for the protection of the defendant and is intended to safeguard him against the vexations and burdens incident to a duplication or multiplication of actions to enforce a liability for which one suit would be sufficient and to avoid the costs and expenses incident to numerous suits on the same cause of action.”  
Ulledalen v. United States Fire Ins. Co.
, 74 N.D. 589, 619, 23 N.W.2d 856, 871 (1946).  “It is a familiar doctrine ‘that causes of action may not be divided, and that one who has availed himself of a part of a single claim or obligation in an action or defense is estopped thereafter from enforcing the remainder of it.’”  
Jacobson v. Mutual Benefit Health & Accident Ass’n
, 73 N.D. 108, 114, 11 N.W.2d 442, 446 (1943) (quoting 
John Miller Co. v. Harvey Mercantile Co.
, 45 N.D. 503, 513, 178 N.W. 802, 806 (1920)); 
see also
 
Lucas v. Porter
, 2008 ND 160, ¶ 10, 755 N.W.2d 88.

[¶19] We reject the claim that Alerus has improperly split its cause of action by bringing separate actions to foreclose the mortgage and to enforce the guaranties.  The defendants are different in each action, and as we explained in 
Mueller
, 294 N.W.2d at 643, an action against a guarantor is based on the contract of guaranty which is an obligation distinct from the obligation imposed by a note and mortgage.  Moreover, the 
Mueller
 Court approved the use of separate actions under these circumstances:

In 
State Bank of Burleigh County [v. Porter
, 167 N.W.2d 527 (N.D. 1969)], the court held that where the obligation of the guarantors was absolute and was a guaranty of payment, the guarantors could not require the creditor to first proceed against the principal debtor on the notes before bringing an action against the guarantors.  Therefore, there is no reason in the instant case, since this is also a guaranty of payment, why the Bank could not proceed directly against the guarantors for a money judgment.

The guarantors cannot at this point claim that the Bank is estopped from doing so because of the foreclosure action.  The guaranty agreement provides that the guarantors “waive all rights of subrogation to any securities and remedies of the Bank.” . . .  Thus, the guarantors, by reason of explicit waivers and conduct, cannot claim that the Bank has prejudiced their rights by acquiring the mortgaged property through the sheriff’s sale as they had ample opportunity to protect their rights. However, our determination that the Bank was not estopped from proceeding directly against the guarantors for a money judgment does not mean that the Bank has the right to a double recovery.

Mueller
, 294 N.W.2d at 644-45.  This Court has not required that actions to enforce a guaranty accompany actions to foreclose a mortgage.  
See, e.g.
, 
State v. Larsen
, 515 N.W.2d 178, 180 (N.D. 1994); 
Norwest Bank North Dakota, Nat’l Ass’n v. Christianson
, 494 N.W.2d 165, 167-68 (N.D. 1992).

[¶20] Here, TMGI and Marcil waived the same rights in their guaranties that the guarantors waived in 
Mueller
.  The record establishes that TMGI and Marcil were informed of the foreclosure proceedings against KRE and had an opportunity to protect their rights in those proceedings.  Alerus would be “free to collect the entire amount guaranteed jointly and severally by [the guarantors] without first resorting to foreclosing on the real estate, and without limiting its recovery to the difference between the fair market value of the real estate and the amount due on the note.”  
Christianson
, 494 N.W.2d at 167-68.  Of course, a bid accepted for the foreclosed property at the sheriff’s sale in this case would reduce the outstanding liability of the guarantors by the amount of the bid, and if the accepted bid equaled the full amount of the indebtedness, the guarantors would be discharged.  
See
 
First Int’l Bank & Trust v. Peterson
, 2009 ND 207, ¶¶ 8-10, 776 N.W.2d 543; 
First Fed. Sav. and Loan Ass’n v. Scherle
, 356 N.W.2d 894, 896-97 (N.D. 1984).  Furthermore, as the district court noted, TMGI and Marcil may challenge any double recovery should one be obtained by Alerus.  We conclude Alerus did not impermissibly split its cause of action.

C

[¶21] TMGI and Marcil argue N.D.C.C. § 32-19-06.1 nevertheless applies because the guaranties that were signed are actually surety contracts.

[¶22] “A contract of guaranty is broadly and clearly distinguished from that of surety in that a contract of guaranty creates a secondary liability while the contract of surety creates a primary liability.”  
State Bank of Burleigh Cnty. v. Porter
, 167 N.W.2d 527, 529 Syll.2 (N.D. 1969).  “A guarantor, not being a joint contractor with his principal, is not bound to do what the principal has contracted to do, but only to answer for the consequences of the default of the principal.”  
Trinity Med. Ctr., Inc. v. Rubbelke
, 389 N.W.2d 805, 807 (N.D. 1986).

[¶23] The obligations of the guarantors were not triggered until KRE defaulted, creating a secondary liability.  We conclude the contracts at issue in this case are contracts of guaranty rather than contracts of surety.

D

[¶24] TMGI and Marcil argue the guaranties are “unenforceable adhesion contracts.” 

[¶25] “An adhesion contract is one drafted by experts in the subject matter of the contract and offered on a ‘take it or leave it’ basis.”  
Strand v. U.S. Bank Nat’l Ass’n ND
, 2005 ND 68, ¶ 13, 693 N.W.2d 918.  The party signing a standard form adhesion contract usually must be in a weaker position.  
Id.
  “Courts presume adhesion contracts are procedurally unconscionable.”  
Quality Bank v. Cavett
, 2010 ND 183, ¶ 8, 788 N.W.2d 629.

[¶26] TMGI and Marcil rely on provisions of the guaranties that are contrary to North Dakota law.  However, TMGI and Marcil acknowledge some of these provisions generally apply only “when allowed by law” under the terms of the guaranty.  Their challenge to a provision waiving reliance on the anti-deficiency judgment statutes is irrelevant because those statutes do not apply in this case.  
See
 
Stuart v. Stammen
, 1999 ND 38, ¶ 12, 590 N.W.2d 224 (waiver involves voluntary relinquishment of an “existing” right).  On the basis of the guarantors’ affidavits, we agree with the district court’s assessment of the guarantors as being “[e]xperienced businessmen.”  They have signed “literally hundreds of different loan documents” “to obtain literally tens of millions of dollars.”  TMGI and Marcil failed to establish a genuine issue of material fact regarding procedural unconscionability.  
See
 
Cavett
, 2010 ND 183, ¶ 10, 788 N.W.2d 629.  We conclude the guaranties are not unenforceable adhesion contracts.  

[¶27] We conclude the district court correctly interpreted the law in this case.

E

[¶28] TMGI and Marcil argue the district court erred in granting summary judgment, because they have raised genuine issues of material fact on their defenses of fraud, mistake, waiver and estoppel.

[¶29] At the time of these proceedings, N.D.R.Civ.P. 9(b) provided: “In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.”  In their answer, TMGI and Marcil use the term “fraud” in a laundry list of alleged defenses to Alerus’s action.  “Mistake” is not included in the list.  The answer merely alleges three times that “it was the intention and agreement of the parties that [T]MGI be the primary guarantor and that Marcil and Rosenberg be secondary guarantors.”  We agree with the district court that TMGI and Marcil’s “responsive pleading is sorely deficient” to raise claims of fraud and mistake.

[¶30] The parol evidence rule is codified in N.D.C.C. § 9-06-07, which provides that “[t]he execution of a contract in writing, whether the law requires it to be written or not, supercedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.”  Section 4 of the guaranty contracts unambiguously states that “[m]y liability . . . is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt.”  TMGI and Marcil’s argument about being only “secondarily” liable on its face violates the parol evidence rule.

[¶31] TMGI and Marcil argue summary judgment was improperly granted under 
Citizens State Bank-Midwest v. Symington
, 2010 ND 56, ¶ 20, 780 N.W.2d 676, in which a majority of this Court noted that “[a] court may consider parol evidence when a written agreement is ambiguous, or when the written agreement does not reflect the parties’ intent because of fraud, mistake, or accident.”  In 
Symington
, the majority of the Court reversed a summary judgment requiring a father to pay the bank more than $200,000 on a commercial guaranty for the debt of a business owned by his son.  
Id.
 at ¶ 1.  To relieve the son from the necessity of mortgaging his home, the father signed a commercial guaranty purporting to guaranty “‘all obligations’” of the son’s business.  
Id.
 at ¶ 3.  The father presented evidence by affidavit that a named bank employee induced him to sign the guaranty by twice assuring the father that “all he was doing was helping [the son] buy one load of lumber for $20,000.”  
Id.
 at ¶¶ 3, 21.  The majority of the Court concluded this evidence was sufficient to raise a factual issue about fraud or mistake and the father’s inducement for signing the guaranty.  
Id.
 at ¶ 21.

[¶32] Assuming that TMGI and Marcil have sufficiently pled fraud and mistake, we conclude the evidence they presented to support those claims does not raise genuine issues of material fact.  The evidence presented in 
Symington
 consisted of a detailed account of the disputed transaction, including the identification of the bank employee who allegedly induced the father to sign the guaranty and the statements the employee allegedly had made to the father.  Here, the guarantors’ allegations are conclusory and vague at best.  They claim that in the course of obtaining “tens of millions of dollars of financing” through “hundreds of different loan documents” “it was always my understanding that [TMGI] would be primarily liable and that I would be secondarily liable.”  Although the guarantors claim “I rely on the lender to be fair and accurate in presenting such documents to me for signature,” they do not allege that any Alerus employee affirmatively misled them or induced them to sign the guaranties.  The allegations appear to reference the guarantors’ general experience with guaranties over a period of time.  The district court correctly observed that “[e]xperienced businessmen, who had full opportunity to read the terms of a contract, can not later assert they were tricked or mistaken as to its terms.”  A “party cannot claim ignorance because of a failure to read a guaranty.”  
Symington
, 2010 ND 56, ¶ 20, 780 N.W.2d 676.

[¶33] We conclude TMGI and Marcil have not presented sufficient evidence to raise genuine issues of material fact about fraud, mistake, waiver, or estoppel.  We conclude the district court did not err in granting Alerus’s motion for summary judgment.

III

[¶34] TMGI and Marcil argue the district court erred in failing to grant their N.D.R.Civ.P. 56(f) motion to allow additional time for discovery before ruling on the summary judgment motion.  Although the court did not specifically state the motion was denied, we assume the court denied the motion because it granted summary judgment in favor of Alerus.  
See
 
State v. Keyes
, 2000 ND 83, ¶ 4, 609 N.W.2d 428; 
Ireland’s Lumber Yard v. Progressive Contractors, Inc.
, 122 N.W.2d 554, 561 (N.D. 1963).

[¶35] “The underlying purpose of N.D.R.Civ.P. 56(f) is to ensure that a party has a fair opportunity to conduct discovery before responding to a summary judgment motion.”  
Vicknair v. Phelps Dodge Indus., Inc.
, 2011 ND 39, ¶ 19, 794 N.W.2d 746.  We have cautioned:

It is not enough, however, for a party invoking N.D.R.Civ.P. 56(f) to merely recite conclusory, general allegations that additional discovery is needed.  Rather, N.D.R.Civ.P. 56(f) requires that the party, preferably by affidavit, identify with specificity what particular information is sought, and explain how that information would preclude summary judgment and why it has not previously been obtained.

Vicknair
, at ¶ 19.  A decision on a N.D.R.Civ.P. 56(f) motion is within the court’s discretion, and we will not reverse that decision unless the court abused its discretion. 
Choice Fin. Grp. v. Schellpfeffer
, 2006 ND 87, ¶ 9, 712 N.W.2d 855.  A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or if it misinterprets or misapplies the law.  
Id.

[¶36] TMGI and Marcil did not submit an affidavit in support of their N.D.R.Civ.P. 56(f) motion, but argued in their brief to the district court that additional time was needed “to depose the parties with whom the loan was negotiated,” to determine “the amount of a ‘deficiency judgment’ that might be obtained,” and to obtain additional “applicable legislative history.”  TMGI and Marcil did not adequately explain the specific information sought, how the information would have precluded summary judgment, or why the information had not been previously obtained.

[¶37] We conclude the district court did not abuse its discretion in denying the guarantors’ N.D.R.Civ.P. 56(f) motion.

IV

[¶38] We have considered the other arguments raised and deem them to be either unnecessary to our decision or without merit.  We affirm the judgment against TMGI and Marcil.

[¶39] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.