Filed 2/27/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 43

John D. Erickson, Richard B. 

Dregseth, and Jon A. Ramsey, Plaintiffs

Richard B. Dregseth, Appellant

v.

Randy Brown, Defendant and Appellee

and

Capital Harvest, Inc., Defendant

No. 20110144

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Karen Kosanda Braaten, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Ronald H. McLean (argued) and Kasey Duane McNary (appeared), 10 Roberts Street, P.O. Box 6017, Fargo, ND 58108-6017, for appellant.

W. Todd Haggart (argued), 218 NP Avenue, P.O. Box 1389, Fargo, ND 58107-1389, for defendant and appellee.

Erickson v. Brown

No. 20110144

Crothers, Justice.

[¶1] Richard Dregseth appeals the district court’s judgment dismissing his equitable claims against Randy Brown.  Dregseth argues the district court erred by (1) failing to make findings of fact in compliance with N.D.R.Civ.P. 52(a)(1), (2) failing to reject Brown’s testimony and (3) dismissing Dregseth’s promissory estoppel, equitable estoppel and unjust enrichment claims.  We affirm.

I

[¶2] Our prior decision in this case contains the relevant facts, and we will not repeat them except as necessary to resolve the issues raised in this appeal.  
See
 
Erickson v. Brown
 (“
Erickson I
”), 2008 ND 57, ¶¶ 3-11, 747 N.W.2d 34.  In 1999, Dregseth left his job at Bremer Bank to work for Brown at Capital Harvest, Inc., a captive finance company for AGSCO, Inc., a corporation owned Brown.  Dregseth worked for Brown until 2003, first at Capital Harvest then at AGSCO.  In 2005, Dregseth and two former Capital Harvest employees, John D. Erickson and Jon A. Ramsey, sued Brown and Capital Harvest for breach of contract, fraud, deceit, promissory estoppel, equitable estoppel, unjust enrichment and breach of fiduciary duty.  Dregseth claimed he was entitled to be paid the value of an ownership interest in Capital Harvest that Brown promised to provide as part of Dregseth’s compensation.

[¶3] Prior to the last appeal, the district court dismissed all of Dregseth’s claims before trial except those against Brown for breach of contract and for what a majority of this Court called fraud.  The jury found Brown did not enter into a contract with Dregseth, and the district court entered a final judgment dismissing all of Dregseth’s claims against Capital Harvest and Brown.  Dregseth appealed.

[¶4] In 
Erickson I
, we affirmed in part, reversed in part and remanded for further proceedings on Dregseth’s deceit and equitable claims.  Those claims were based on allegations that Brown initially agreed to “give” Dregseth an ownership interest but subsequently and unilaterally decided to allow Dregseth to “earn” an ownership interest if Capital Harvest was profitable.  Dregseth claimed Brown first offered Dregseth a 5 percent ownership interest in Capital Harvest.  Dregseth claimed he countered by requesting an 8 percent ownership interest.  Dregseth claimed Erickson, acting on Brown’s behalf, accepted Dregseth’s proposal, giving rise to Brown’s first alleged promise to give Dregseth an 8 percent ownership interest.  Dregseth claimed Brown then unilaterally changed the agreement  requiring Dregseth to earn the ownership interest under Erickson’s written transfer schedule.  We affirmed dismissal of the claims based on the alleged promise to earn an interest but remanded for further proceedings on Brown’s alleged promise to give Dregseth an interest.

[¶5] Before trial, the parties stipulated to dismissal of Dregseth’s deceit claim against Brown and all of his claims against Capital Harvest.  On June 8-10, 2010, the district court conducted a bench trial on Dregseth’s promissory estoppel, equitable estoppel and unjust enrichment claims against Brown.  Dregseth, Brown, Erickson and two economists testified at trial.  On January 26, 2011, the district court issued an order dismissing Dregseth’s remaining claims.  Judgment was entered on March 11, 2011, and amended judgment was entered on July 1, 2011.  Dregseth took a timely appeal from the judgment.

II

[¶6] Dregseth argues the district court failed to comply with N.D.R.Civ.P. 52(a)(1) because its written decision is unclear whether the “Facts” section constitutes the court’s specific findings.  Dregseth requests remand for new findings of fact and conclusions of law.  Brown responds that no remand is necessary because the district court’s findings are sufficient to enable this Court to understand the district court’s reasoning.

[¶7] “In an action tried on the facts without a jury[,] . . . the court must find the facts specially and state its conclusions of law separately.”  N.D.R.Civ.P. 52(a)(1).  The rule expressly permits making findings of fact and conclusions of law “in an opinion or memorandum of decision filed by the court.”  
Id.
  “Findings of fact are adequate under N.D.R.Civ.P. 52(a) if they provide this Court with an understanding of the district court’s factual basis used in reaching its decision.”  
City of Fargo v. Salsman
, 2009 ND 15, ¶ 9, 760 N.W.2d 123.

[¶8] Here, the district court issued a 17-page Memorandum Decision and Order for Judgment stating its factual findings and the rationale for its decision.  The district court’s decision listed the facts of the case and identified the issues in dispute.  The decision contains the district court’s analysis of the identified issues under the law and the facts of the case.  The order is adequate under N.D.R.Civ.P. 52(a)(1) because it provides us with an understanding of the factual basis for the district court’s decision.

III

[¶9] Dregseth claims the district court was required to reject the truth of all of Brown’s testimony because Brown committed perjury in a deposition prior to the first trial regarding the possible sale of AGSCO.  He argues North Dakota Pattern Jury Instruction, NDJI-Civil 80.02, required the district court to reject Brown’s testimony unless corroborated by other credible evidence.  Brown counters that his testimony about matters other than the sale of AGSCO could be, and properly was, accepted by the district court because the factual basis for the testimony was corroborated by other witnesses and documents.

[¶10] We have cautioned against citing pattern jury instructions to courts as representative statements of substantive law:

“The North Dakota Pattern Jury Instructions are published as a guide by the State Bar Association, in conjunction with the North Dakota Pattern Jury Instruction Commission.  The pattern jury instructions are not controlling law, and are published with the caution that they are ‘neither a restatement nor an encyclopedia of the prevailing law.’”

State v. Bauer
, 2010 ND 109, ¶ 14, 783 N.W.2d 21 (quotation and inside citations omitted).

[¶11] Our prevailing law on how a court should treat intentionally false testimony is found in 
Urlaub v. Urlaub
, 325 N.W.2d 234 (N.D. 1982).  In 
Urlaub
, the district court determined a witness intentionally gave false testimony on a material issue but relied on the witness’ testimony regarding other issues.  
Id.
 at 235.  The appellant argued the court erred by failing to reject all of the witness’ testimony.  
Id.
  Reasoning that the district court was the best judge of credibility, this Court stated:

“The trial judge was the trier of fact, and, as a corollary, the judge of the credibility of the witnesses.  The trial judge is uniquely qualified to determine the credibility of a witness with regard to the truthfulness of the various facts to which the witness testified.  The trial judge, like a jury, has the opportunity to observe the demeanor of the witness and all of the other matters which are taken into consideration in determining the credibility of a witness.  Unlike most jurors, the trial judge is learned in the law and is aware of the various factors which need to be taken into consideration.  We need only determine whether or not the findings of the trial court are clearly erroneous under the standard set forth in Rule 52(a), N.D.R.Civ.P.  We see no reason to encumber the trial judge with various rules announced by this [C]ourt concerning the credibility of a witness.”

Urlaub
, at 236.

[¶12] Here, Brown admitted at trial to giving false testimony during a 2006 deposition about the possible sale of AGSCO.  Despite Brown’s admission, the district court relied on evidence from Brown, other witnesses and documents to support its findings on the remaining equitable issues.  As we more fully discuss below, the district court’s partial reliance on Brown’s testimony in support of its rulings is not grounds for reversal of the promissory estoppel, equitable estoppel or unjust enrichment decisions because other evidence corroborated Brown’s testimony or supported the district court’s findings without reliance on Brown’s testimony.

IV

A

[¶13] Dregseth contends the district court erred by dismissing his equitable claims.  He claims the district court clearly erred by failing under the promissory estoppel theory to award him judgment against Brown for the value of his 8 percent interest in Capital Harvest.  Dregseth further claims the district court erred finding Dregseth failed to show that Brown’s promise of an ownership interest in the corporation included all the essential terms of a grant and that injustice can be avoided only by enforcing Brown’s promise.  Brown argues the district court’s findings that the promise was based on preliminary negotiations and that no injustice existed were not clearly erroneous.

[¶14] The elements of promissory estoppel are “(1) a promise which the promisor should reasonably expect will cause a change of position by the promisee; (2) a substantial change in the promisee’s position through action or forbearance; (3) justifiable reliance on the promise; and (4) injustice which can only be avoided by enforcing the promise.”  
Dalan v. Paracelsus Healthcare Corp.
, 2002 ND 46, ¶ 16, 640 N.W.2d 726 (quoting 
Peterson Mechanical, Inc. v. Nereson
, 466 N.W.2d 568, 571 (N.D. 1991)).

[¶15] “Estoppel is generally a question of fact.”  
Peterson Mechanical
, 466 N.W.2d at 571.  We review a district court’s findings of fact under the “clearly erroneous” standard of review.  N.D.R.Civ.P. 52(a)(6).  “A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made.”  
Carlson v. Carlson
, 2011 ND 168, ¶ 15, 802 N.W.2d 436 (quotation omitted).

[¶16] The district court found Dregseth failed to establish a promise sufficient to support a claim for promissory estoppel.  The promise or agreement supporting a promissory estoppel claim must be “clear, definite, and unambiguous as to essential terms before the doctrine of promissory estoppel may be invoked to enforce an agreement or to award damages for the breach thereof.”  
Lohse v. Atlantic Richfield Co.
, 389 N.W.2d 352, 357 (N.D. 1986).  This requirement arises from “a reluctance to enforce incomplete agreements based upon preliminary negotiations and discussions or upon an agreement to negotiate the remaining terms of a contract in the future.”  
Id.

[¶17] The district court made specific findings about the alleged agreement here:

“[T]his Court need not determine Brown’s credibility with regard to his testimony that he did not promise Dregseth an ownership interest as even if the Court rejected Brown’s testimony as not being credible in this regard and found that Brown had made a promise to Dregseth of an 8% ownership interest in Capital Harvest, that promise is not unambiguous as to its terms.  That promise is an incomplete promise based upon preliminary negotiations and discussions and as such cannot be enforced under the doctrine of promissory estoppel.  At the time of the alleged promise, the parties in this case failed to discuss or agree upon the many essential terms as to the transfer of ownership in Capital Harvest, such as when stock would be transferred, voting rights of the stock, limitations on stock sales or transfers, etc.  The alleged promise of a transfer of 8% ownership interest in Capital Harvest is just too indefinite, vague and incomplete to be enforced, and Dregseth has not met his burden of showing an unambiguous promise or agreement.”

[¶18] In addition to facts cited by the district court, Brown points to evidence in the record supporting the court’s finding of a lack of clear or definite terms of an agreement including that Capital Harvest had yet to be formed when Dregseth decided to leave Bremer Bank, the lack of discussion of how Capital Harvest would be capitalized, the lack of agreement on shareholder voting rights or share value and the lack of any writing concerning the alleged promise.  Dregseth responds that much of this information is not required under the North Dakota Business Corporations Act and that its absence does not prevent formation of a corporation.  While we agree the lack of agreement on the details about share value and governance does not prevent formation, it does not follow that the lack of the same information cannot be relied upon by the district court to conclude the parties’ overall business agreement was not sufficiently solidified to satisfy the legal requirements of promissory estoppel.

[¶19] The district court’s finding Dregseth failed to establish the first element of promissory estoppel is supported by evidence in the record, including evidence from the documents, from Erickson, from Dregseth and, in part, Brown.  We therefore conclude the district court was not clearly erroneous in finding “Dregseth[] has failed to meet his burden to prove the first essential element of promissory estoppel by failing to show a sufficiently complete, clear and unambiguous promise[.]”

[¶20] Having concluded the district court’s first finding was not clearly erroneous, the first of four elements does not exist and the claim cannot be proven successfully.  Therefore, it is unnecessary and advisory to proceed to discuss whether the district court’s finding on the “injustice” prong of the promissory estoppel claim was clearly erroneous.  
See
 
Hurt v. Freeland
, 1997 ND 194, ¶ 5, 569 N.W.2d 266 (dismissing an appeal for lack of N.D.R.Civ.P. 54(b) certification this Court stated, “Determining the first prong is unnecessary, because this case obviously fails the second[.]”); 
State v. McLain
, 403 N.W.2d 16, 18 (N.D. 1987) (in post-conviction relief case if we can dispose of a case by addressing only one element of the 
Strickland [v. Washington
, 466 U.S. 668 (1984)] test, it is unnecessary to address both elements); 
Buzzell v. Libi
, 340 N.W.2d 36, 41 n.4 (N.D. 1983) (“Because we have concluded that [plaintiff] failed to establish the element of causation, we find it unnecessary to reach the issue of lack of injury or damages.”).

B

[¶21] Dregseth claims the district court erred by concluding equitable estoppel requires an affirmative promise or representation.  Brown argues that, as a matter of law, equitable estoppel does not apply in this case.  Alternatively, he argues the district court’s finding that equitable estoppel did not apply was not clearly erroneous.

[¶22] “The purpose of equitable estoppel is to preserve rights already acquired and not to create new ones; equitable estoppel does not itself give rise to a cause of action.”  
Lohse
, 389 N.W.2d at 357-58.  
See
 28 Am. Jur. 2d 
Estoppel and Waiver
 § 34 (2011).  The district court concluded equitable estoppel did not apply because Dregseth’s promissory estoppel claim failed: 

“As addressed above, this Court has found that the evidence was insufficient to establish there was a clear, unambiguous promise or agreement to give Dregseth an interest in Capital Harvest, and, therefore, there is no promise or agreement that can be enforced.  Under this finding, the establishment of equitable estoppel would be of no avail to Dregseth. . . . [E]quitable estoppel does not by itself give rise to a cause of action, nor can it be used to create an enforceable agreement between the parties.  Equitable estoppel merely acts to estop a person from asserting that the prior statement, act or omission is not true.”

[¶23] Dregseth argued Brown should be equitably estopped from denying that Dregseth was entitled to an ownership interest in Capital Harvest.  The district court correctly dismissed this claim after concluding equitable estoppel is not an affirmative cause of action and cannot be used to create an enforceable agreement between the parties.

V

[¶24] Dregseth contends the district court erred by concluding he did not prove all the elements of unjust enrichment.  Brown argues Dregseth failed to prove a connection between the enrichment and the impoverishment.  Alternatively, Brown claims Dregseth failed to prove an absence of justification for the enrichment and the impoverishment.

[¶25] “A determination of whether or not there has been unjust enrichment is fully reviewable as a matter of law[.]”  
Zuger v. N.D. Ins. Guar. Ass’n
, 494 N.W.2d 135, 138 (N.D. 1992).  “Unjust enrichment is an equitable doctrine, applied in the absence of an express or implied contract, to prevent a person from being unjustly enriched at the expense of another.”  
Id.
  “The doctrine of unjust enrichment generally rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another.  The doctrine serves as a basis for requiring restitution of benefits conferred ‘in the absence of an express or implied in fact contract.’”  
Cavalier Cnty. Memorial Hosp. Ass’n v. Kartes
, 343 N.W.2d 781, 784 (N.D. 1984) (quotation and inside citation omitted).  “To recover under a theory of unjust enrichment one must prove five elements (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law.”  
Zuger
, at 138.  “The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.”  
Id.

[¶26] At trial, Dregseth argued his efforts at Capital Harvest increased the value of AGSCO.  Dregseth argued Brown was unjustly enriched because Brown refused to compensate Dregseth with an ownership interest.  Brown argued Dregseth’s efforts at Capital Harvest did not increase AGSCO’s value.  The district court found Dregseth failed to prove unjust enrichment, stating:

“Dregseth contends that Brown was enriched at his expense when Dregseth went to work for Brown in setting up Capital Harvest for which he received a salary of significantly less than he was making at Bremer Bank upon Brown’s promise that Dregseth would be given an ownership interest in Capital Harvest, thus making up the salary difference.  Dregseth further argues that Brown was unjustly enriched when he sold AGSCO to UAP due to an increased value of AGSCO brought about by the value of Capital Harvest.  Brown basically kept all of the sale proceeds received from UAP, including the value received for Capital Harvest assets.  But what portion of this purchase price was due to value added by Capital Harvest?  The evidence in this case does not show what portion, if any, of the purchase price paid for by UAP for AGSCO was due to any added value to AGSCO’s other purchased assets by Capital Harvest.  Capital Harvest was not even valued at the time of UAP’s purchase.  UAP already provided financing to its customers and was not looking at purchasing a captive finance company.  UAP was only allowed to use the name Capital Harvest for the remainder of the 2007 season, just so it could close out that season. The evidence was that AGSCO was a successful company long before Capital Harvest was formed.  AGSCO’s sales had been increasing over the years, and it had sales of over $54 million prior to the formation of Capital Harvest.  AGSCO’s sales continued to increase after formation of Capital Harvest from $55 million in 2000 to $57 million in 2001 and $66 million in 2002, however, its profit margin was smaller in these years.  It is speculative at best as to what additional value Capital Harvest brought to AGSCO that AGSCO would not have generated on its own.  It is also speculative at best as to what increased value in AGSCO, if any, was due to Dregseth’s efforts as opposed to other employees of AGSCO.  Dregseth has simply failed in his proof on this essential element as to the benefit Brown received from Dregseth that would be inequitable for Brown to retain without paying Dregseth for its value. 

“Further, Dregseth was paid a salary for his services in connection with his employment at Capital Harvest and also in connection with his employment for Brown’s other affiliated companies.  There has been no showing that Dregseth was insufficiently compensated for his work with Capital Harvest and Brown’s other affiliated companies, nor has Dregseth shown that Brown was enriched unjustly by the services rendered to Capital Harvest or Brown’s other affiliated  companies.”

[¶27] The district court’s findings and conclusions are based on evidence from all of the witnesses, including Dregseth, Brown and the economists who testified on behalf of both parties.  We conclude the district court did not err relying on that evidence, nor did it err concluding under the facts of this case that Brown was not unjustly enriched by not paying Dregseth for the value of the ownership interest in Capital Harvest that was not transferred by Brown.

VI

[¶28] We affirm the district court’s judgment, concluding the court did not fail to make findings of fact in compliance with N.D.R.Civ.P. 52(a)(1), did not err when failing to reject Brown’s testimony in its entirety and did not err when dismissing Dregseth’s promissory estoppel, equitable estoppel and unjust enrichment claims.

[¶29] Daniel J. Crothers

Mary Muehlen Maring

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.

John C. McClintock, Jr., D.J.

[¶30] The Honorable John C. McClintock, Jr., D.J., sitting in place of Kapsner, J., disqualified.