Filed 4/4/13 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2013 ND 46

Arthur M. Hayden and Joy Lynn 

Hayden, as co-conservators and 

co-guardians of Todd Lowell Hayden, 

and in their individual capacity and 

Smith Bakke Porsborg Schweigert 

& Armstrong, Plaintiffs and Appellants

v.

Medcenter One, Inc., Medcenter One 

Living Centers, Billings Clinic, 

and Sidney Health Center, Defendants

Medcenter One, Inc., Medcenter One 

Living Centers, and Billings Clinic,   Appellees

No. 20120337

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Randall J. Bakke (argued) and Shawn A. Grinolds (on brief), P.O. Box 460, Bismarck, N.D. 58502-0460, for plaintiffs and appellants.

Tracy L. Vigness Kolb (argued) and Lance D. Schreiner (appeared), P.O. Box 1695, Bismarck, N.D. 58502-1695, for Medcenter One Living Centers and Medcenter One, Inc.

Christopher C. Voigt (argued), P.O. Box 2529, Billings, Mont. 59103-2529, and Amy Marie Oster (appeared), P.O. Box 2798, Bismarck, N.D. 58502-2798, for Billings Clinic.

Hayden v. Medcenter One, Inc.

No. 20120337

Kapsner, Justice.

[¶1] Arthur and Joy Lynn Hayden, in their individual capacities and as co-

conservators and co-guardians of Todd Hayden, and the law firm of Smith Bakke Porsborg Schweigert & Armstrong (“law firm”) appeal from a summary judgment dismissing their claims against Medcenter One, Inc., and other medical providers for expenses and attorney fees incurred in securing payments from Todd Hayden’s medical insurance company for his medical expenses.  We affirm, concluding the district court did not err in ruling as a matter of law that the medical providers are not liable to the Haydens and the law firm under their asserted theories of unjust enrichment, quantum meruit, equitable estoppel and the common fund doctrine.

I

[¶2] On June 12, 2009, Todd Hayden sustained severe brain injuries in an all-

terrain vehicle accident near Sidney, Montana.  At the time of the injury, Todd Hayden was an adult employed by Nabors Industries, Inc., and he was covered under a group health plan administered by Blue Cross Blue Shield of Texas (“BCBSTX”).  He was transported by air ambulance from Sidney Health Center to Billings Clinic in Billings, Montana, where he was treated for his injuries for approximately one month.  Todd Hayden was then transferred to Medcenter in Bismarck to be closer to his parents who lived in South Heart.  He has received medical care from Medcenter and its affiliates since then.  Billings Clinic billed Todd Hayden more than $227,000 and Medcenter billed him more than $777,000 for his medical care.

[¶3] Although BCBSTX initially paid some of the claims submitted by the medical providers, it discontinued making payments and alleged Todd Hayden’s injuries were not covered by the health insurance policy.  On March 26, 2010, Todd Hayden’s parents, individually and as his co-conservators and co-guardians, entered into a contingency fee agreement with the law firm to represent them in attempting to compel BCBSTX to provide medical insurance coverage for the injuries stemming from the June 2009 accident.  In June 2010, Todd Hayden’s parents sued BCBSTX and others in the United States District Court in North Dakota alleging the defendants had wrongfully failed to pay health insurance benefits.  In June 2011, BCBSTX began making payments for Todd Hayden’s medical care at discounted rates directly to his medical service providers.  In the meantime, Todd Hayden’s parents had been personally paying his COBRA premium payments to prevent the insurance policy from lapsing.  The federal court action is ongoing.

[¶4] In January 2012, Todd Hayden’s parents and the law firm commenced this action in state court against the medical providers requesting reimbursement for their expenses and liabilities incurred in pursuing the federal court action.  They alleged the medical providers were liable to pay attorney fees under the contingency fee agreement because, absent the federal court action, the medical providers would not have received payment for Todd Hayden’s medical bills.  They contended recovery was available under theories of unjust enrichment, quantum meruit, equitable estoppel, and the common fund doctrine.  The district court granted summary judgment in favor of the medical providers dismissing the lawsuit.  The court concluded as a matter of law that the theories of recovery asserted by the Haydens and the law firm were not viable under the circumstances.

II

[¶5] The Haydens and the law firm argue the district court erred in granting summary judgment dismissing their claims.  In their appellate brief, they point out that dismissal of the law firm and Todd Hayden’s equitable claims are not being challenged and the only issues on appeal are “whether the trial judge erred in dismissing Todd’s Parents’ equitable claims, as well as the claims of Todd’s Parents and [the law firm] under a ‘common fund’ theory.”

[¶6] Our standard of review for summary judgments is well-established:

Summary judgment is a procedural device used to promptly resolve a controversy on the merits without a trial if either party is entitled to judgment as a matter of law and the material facts are undisputed or if resolving the disputed facts would not alter the result.  “‘Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reasonable differences of opinion exist as to the inferences to be drawn from the undisputed facts.’”  Whether a district court has properly granted a motion for summary judgment is a question of law, which this Court reviews de novo on the record. 

 

When we review a district court’s decision on a motion for summary judgment, we view the evidence in a light most favorable to the party opposing the motion and give the opposing party all favorable inferences.  In determining whether summary judgment is appropriate, the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn from the evidence.  The moving party must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law.  A party resisting the motion for summary judgment “cannot merely rely on the pleadings or other unsupported conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact.”

 

Riedlinger v. Steam Brothers, Inc.
, 2013 ND 14, ¶ 10 (quoting 
Burris Carpet Plus, Inc. v. Burris
, 2010 ND 118, ¶¶ 10-11, 785 
N.W.2d
 164 (citations omitted)).  

A

[¶7] The Haydens and the law firm argue the district court erred in granting summary judgment dismissing their claims because the court’s ruling was “premature” and they were not afforded a reasonable opportunity to conduct discovery.  Although the court did not specifically state the request for additional time was denied, we assume the court denied the request because it granted summary judgment in favor of the defendants.  
See
 
Alerus Fin., N.A. v. Marcil Grp. Inc.
, 2011 ND 205, ¶ 34, 806 
N.W.2d
 160.

[¶8] The proper method for a party to seek additional time for discovery is to make a motion under N.D.R.Civ.P. 56(f).  
See, e.g.
, 
Alerus Fin., N.A.
, 2011 ND 205, ¶ 34, 806 
N.W.2d
 160.

“The underlying purpose of N.D.R.Civ.P. 56(f) is to ensure that a party has a fair opportunity to conduct discovery before responding to a summary judgment motion.”  
Vicknair v. Phelps Dodge Indus., Inc.
, 2011 ND 39, ¶ 19, 794 N.W.2d 746. We have cautioned:

 

It is not enough, however, for a party invoking N.D.R.Civ.P. 56(f) to merely recite conclusory, general allegations that additional discovery is needed.  Rather, N.D.R.Civ.P. 56(f) requires that the party, preferably by affidavit, identify with specificity what particular information is sought, and explain how that information would preclude summary judgment and why it has not previously been obtained.

 

Vicknair
, at ¶ 19.  A decision on a N.D.R.Civ.P. 56(f) motion is within the court’s discretion, and we will not reverse that decision unless the court abused its discretion.  
Choice Fin. Grp. v. Schellpfeffer
, 2006 ND 87, ¶ 9, 712 N.W.2d 855.  A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, or if it misinterprets or misapplies the law.  
Id.

 

Alerus Fin., N.A.
, at ¶ 35.

[¶9] The Haydens and the law firm did not move for additional time for discovery under N.D.R.Civ.P. 56(f) or file an affidavit detailing their need for more time, but presented six reasons in their district court brief why summary judgment was premature.  These reasons do not explain how the information would preclude summary judgment or why the information had not been previously obtained.

[¶10] We conclude the district court did not abuse its discretion in refusing to allow additional time for discovery.

B

[¶11] The Haydens and the law firm argue summary judgment on the equitable claims should be reversed because the district court made a “critical error of fact” in finding Arthur and Joy Lynn Hayden agreed to pay for Todd Hayden’s medical care.

[¶12] At one point in its decision, the district court said “the Haydens expressly agreed that either they [or] Todd Hayden would pay [Medcenter] for charges related to Todd Hayden’s medical treatment.”  Any ambiguity in this statement is clarified by several other references in the decision to the Haydens’ financial responsibility to pay Todd Hayden’s medical bills “as his co-conservators and co-guardians.”  The court specifically said “the Haydens understood, and continue to understand, that they are not primarily responsible for Todd Hayden’s medical bills.”  Indeed, it has been undisputed by the parties throughout these proceedings that Arthur and Joy Lynn Hayden have no legal obligation to pay for Todd Hayden’s medical care.  The court was not laboring under the misapprehension that the Haydens were personally liable for the medical bills.  This argument is without merit.

C

[¶13] The Haydens argue the district court erred in granting summary judgment dismissing their unjust enrichment claim.

[¶14] Unjust enrichment is a broad, equitable doctrine which rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another.  
Smestad v. Harris
, 2012 ND 166, ¶ 16, 820 
N.W.2d
 363.  The doctrine is applied in the absence of an express or implied contract.  
Zuger v. North Dakota Ins. Guar. Ass’n
, 494 
N.W.2d
 135, 138 (N.D. 1992).  Unjust enrichment requires:  (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law.  
Estate of Hill
, 492 
N.W.2d
 288, 295 (N.D. 1992).  The essential element in recovering under the theory is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.  
Zuger
, at 138.  A determination whether there has been unjust enrichment is fully reviewable as a matter of law.  
Erickson v. Brown
, 2012 ND 43, ¶ 25, 813 
N.W.2d
 531.

[¶15] The Haydens argue the medical providers were enriched through their receipt of health insurance payments from BCBSTX, and this enrichment was a direct result of the Haydens’ impoverishment through their expenses in maintaining insurance coverage and by incurring personal liability for attorney fees and costs associated with the federal court action.  They claim there is no equitable justification for the enrichment and impoverishment because the Haydens had no legal obligation to incur the impoverishment for the benefit of the medical providers, who “sat on their hands and awaited the outcome of the federal court lawsuit while fully aware they stood to benefit 
freely
 from the efforts of Todd’s Parents.”

[¶16] In ruling there was no unjust enrichment under these circumstances, the district court mainly relied upon three cases: 
Wilson v . Sisters of St. Francis Health Servs. Inc.
, 952 N.E.2d 793 (Ind. Ct. App. 2011); 
Lynch v. Deaconess Med. Ctr.
, 776 P.2d 681 (Wash. 1989); and 
Zuger
, 494 
N.W.2d
 135.  In 
Wilson
, an attorney, Wilson, had represented an insured patient, T.W., under a contingency fee agreement in an action against the patient’s health insurer, Kaiser Permanente, which had denied coverage for medical bills.  952 N.E.2d at 795.  The insurer eventually paid the hospital, St. Francis, directly for services provided to the patient, and the attorney subsequently sued the hospital seeking payment of the one-third contingency fee.  
Id.
  The court affirmed summary judgment dismissing the unjust enrichment claim:

We agree with St. Francis that the hospital, which is “a stranger” to the continency fee agreement between T.W. and Wilson, “should not be forced to carry the burden of [T.W.’s] contractual obligations. . . .”  Appellee’s Br. p. 19.  There is no dispute that St. Francis provided services to T.W. and is entitled to full payment for its services.  Wilson presented no evidence that a measurable benefit has been conferred on St. Francis under such circumstances that St. Francis’s retention of the Kaiser Permanente insurance payment without payment of attorney fees to Wilson would be unjust.  The trial court properly granted summary judgment to St. Francis on this claim.

 

Id.
 at 797.

[¶17] 
Lynch
 also involved an action by an attorney against a hospital to recover his contingency fee after the attorney successfully obtained coverage from a patient’s insurer which had refused to provide benefits under the patient’s medical insurance policy.  776 P.2d at 682.  Claiming the condition of the patient, Tenney, was preexisting, the insurer, MSC, refused to cover the patient’s hospital bills and the patient hired an attorney, Lynch, to pursue her claim against the insurer.  
Id.
  After negotiating a settlement agreement with the insurer that provided full coverage for the hospitalization, the attorney sued the hospital, Deaconess, seeking to recover the contingency fee on the theory of unjust enrichment.  
Id.
  The court affirmed summary judgment dismissing the claim:

In the case at hand, it is clear that it would not be unjust for Deaconess to retain the $8,056.86 since this amount simply reflects the amount owed by Ms. Tenney.  Thus, it cannot be said that Deaconess should not, in equity and good conscience, retain funds provided to it.  Here, Ms. Tenney had incurred a debt; Deaconess is entitled to full compensation and should not be required to pay attorney fees to Mr. Lynch for this compensation.  Furthermore, the fact that Deaconess eventually recovered this amount is only an incidental benefit derived from Mr. Lynch’s services to his client.  Mr. Lynch was hired by Ms. Tenney to pursue a claim against MSC for failing to pay Ms. Tenney’s medical expenses.  Mr. Lynch was obligated to pursue this claim diligently on behalf of his client.  Thus, the receipt of an incidental benefit by Deaconess does not create an implied contract between the parties, nor does it impose the obligation of restitution upon the recipient.  
Broadlawns Polk Cy. Hosp. ex rel. Fenton v. Estate of Major
, 271 
N.W.2d
 714 (Iowa 1978).

 

Lynch
, at 683.

[¶18] In 
Zuger
, an attorney, Zuger, was hired by the malpractice insurance carrier for several hospitals to defend actions brought against the hospitals.  494 
N.W.2d
 at 136.  After the malpractice insurer was declared insolvent, the attorney sought from the hospitals and the association that assumed responsibility for the defense of pending cases his attorney fees and litigation expenses incurred before the malpractice insurer was declared insolvent.  
Id.
  This Court affirmed summary judgment dismissing his claim based on unjust enrichment:

We agree with the Supreme Court of Nebraska in 
Doyle v. Union Insurance Co.
, 209 Neb. 385, 308 N.W.2d 322 (1981), that persons who have not contracted for legal services do not become legally obligated to pay for those services merely because they have received benefit from the rendering of those services.  All parties, including Zuger, were fully aware from the outset that Zuger’s contract for providing legal services was with the insurer and that it was the insurer to whom Zuger must look for payment.  We hold that Zuger is not entitled to his pre-insolvency attorney fees and litigation expenses from the defendant hospitals on a theory of unjust enrichment.

Zuger
, at 139.

[¶19] The Haydens have not directed our attention to any cases in which courts have found unjust enrichment under similar circumstances, but they argue that the cases relied upon by the district court are distinguishable.  The Haydens argue that, unlike the patients in 
Wilson
 and 
Lynch
, they had “no personal legal obligation to pay for the services provided to Todd.”  They assert the cases relied upon by the court did not involve “a claim by someone who incurred a detriment, with no obligation to do so, which resulted in a direct benefit to the health care provider, and for which no other legal remedy was available.”  This distinction, however, weakens rather than strengthens their unjust enrichment claim.  The Haydens’ argument would allow the equitable remedy to any third party who gratuitously satisfies obligations of the obligor while disallowing the equitable remedy to the obligor himself.  The common thread in 
Wilson
, 
Lynch
, and 
Zuger
 is the reluctance of courts to impose a legal obligation to pay for legal services upon those incidentally benefitted who have not contracted for the services.  
See also
 
Lochthowe v. C.F. Peterson Estate
, 2005 ND 40, ¶ 10, 692 
N.W.2d
 120 (quoting 
Home Ins. of Dickinson v. Speldrich
, 436 
N.W.2d
 1, 3 (N.D. 1989)) (“‘Indisputably, where one is afforded recovery from the person with whom he has a contract, he cannot also recover from third persons incidentally benefitted by his performance.’”).  Furthermore, as in 
Wilson
 and 
Lynch
, the fact remains that the medical providers were entitled to full payment for services rendered either through insurance proceeds or from Todd Hayden himself.  Consequently, there is nothing unjust in allowing the medical providers to retain the full amount of insurance proceeds they received for Todd Hayden’s medical care.

[¶20] We conclude the district court did not err in dismissing the Haydens’ unjust enrichment claim as a matter of law.

D

[¶21] The Haydens argue the district court erred in granting summary judgment dismissing their quantum meruit claim.

[¶22] Quantum meruit is an equitable action in which the law implies a promise to pay for the reasonable value of services furnished.  
Schmidt v. First Nat. Bank & Trust Co.
, 453 
N.W.2d
 602, 605 (N.D. 1990).  To prevail on a claim based on quantum meruit, the claimant must establish the recipient accepted benefits under circumstances which would reasonably notify the recipient that the claimant had an expectation of payment for the services rendered.  
Disciplinary Bd. v. Moe
, 1999 ND 110, ¶ 14, 594 
N.W.2d
 317.  Compensability under quantum meruit requires that the services rendered be of such a nature that, under the circumstances of a particular case, fairness and justice compel the conclusion that they ought to be compensated on an implied-in-law contractual theory because the recipient ought to have been forewarned that those services “do not come cost-free.”  
Estate of Zent
, 459 
N.W.2d 
 795, 800 (N.D. 1990).  Although the right to recover under a theory of quantum meruit is fact dependent, if the evidence is such that reasoning minds could draw but one conclusion, the fact question becomes a question of law for which summary judgment is appropriate.  
Schmidt
, 453 
N.W.2d
 at 605.

[¶23] The Haydens argue they should be allowed to recover under quantum meruit because “Billings Clinic and Medcenter One were expressly advised of Todd’s Parents’ efforts in pursuing a claim against BCBSTX to compel payment of insurance benefits relative to the care being provided Todd by Billings Clinic and Medcenter One.”  They rely on a records request to Billings Clinic notifying it of the federal court lawsuit and requesting Todd Hayden’s medical records.  They also rely on a contact between the Haydens’ attorney and a Medcenter employee during which the employee indicated Medcenter “would leave the situation between patient and insurance carrier, and would not join in a lawsuit with the Haydens because said lawsuit would likely be a lost cause.”  Neither of these contacts indicates the medical providers were informed that the Haydens would seek attorney fees from the providers if they received payment from BCBSTX.

[¶24] We conclude the district court did not err in dismissing the Haydens’ quantum meruit claim as a matter of law.  
See
 
Wilson
, 952 N.E.2d at 795-97 (dismissing quantum meruit claim for same reasons unjust enrichment claim rejected).

E

[¶25] The Haydens argue the district court erred in granting summary judgment dismissing their equitable estoppel claim.

[¶26] The doctrine of equitable estoppel is codified in N.D.C.C. § 31-11-06, which provides, “[w]hen a party, by that party’s own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, that party shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission.”  To establish equitable estoppel, the plaintiff must show: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than those which the defendant subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the plaintiff; and (3) knowledge, actual or constructive, of the real facts.  
Benson v. SRT Commc’ns, Inc.
, 2012 ND 58, ¶ 27, 813 
N.W.2d
 552.  Reliance on the conduct of the party against whom equitable estoppel is asserted must be reasonable, and there must be some form of affirmative deception by that party.  
Dalan v. Paracelsus Healthcare Corp.
, 2002 ND 46, ¶ 19, 640 
N.W.2d
 726.  Summary judgment is appropriate if the party asserting equitable estoppel fails to raise a genuine issue of material fact on a required element of the claim.  
Id.
 at ¶¶ 1, 21-23.

[¶27] The Haydens rely on their attorney’s contact with the Medcenter employee who purportedly told the attorney a lawsuit against BCBSTX was a “lost cause.”  Viewing the evidence in the light most favorable to the Haydens, we conclude they have failed to raise a genuine issue of material fact that the medical providers engaged in any affirmative deceptive conduct.  Moreover, equitable estoppel does not by itself give rise to a cause of action, and it cannot be used to create an enforceable agreement between the parties.  
See
 
Erickson
, 2012 ND 43, ¶ 22, 813 
N.W.2d
 531; 
Lohse v. Atlantic Richfield Co.
, 389 
N.W.2d
 352, 357 (N.D. 1986).

[¶28] We conclude the district court did not err in dismissing the equitable estoppel claim as a matter of law.

F

[¶29] The Haydens and the law firm argue the district court erred in granting summary judgment dismissing their claim based on the common fund doctrine.

[¶30] In 
Mann v. North Dakota Tax Comm’r
, 2007 ND 119, ¶ 38, 736 
N.W.2d
 464, we discussed the common fund doctrine:

North Dakota applies the American rule that every litigant is responsible for his own attorney’s fees, and therefore successful litigants are not entitled to recover attorney’s fees unless authorized by statute or contract.  
Deacon’s Development, LLP v. Lamb
, 2006 ND 172, ¶ 11, 719 N.W.2d 379.  The common fund doctrine is a recognized exception to the general principle that every litigant should bear his own attorney’s fees, and the doctrine provides that a litigant who recovers a common fund for the benefit of others is entitled to reasonable attorney’s fees from the fund as a whole.  
Boeing Co. v. Van Gemert
, 444 U.S. 472, 478 (1980).  The purpose of the common fund doctrine is to spread out the attorney’s fees proportionately among those who benefit from the suit, recognizing “that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant’s expense.”  
Id.
  The common fund doctrine is consistent with the American rule because the expense is spread out among those who benefit from the suit rather than requiring the losing party to pay the cost of the litigation.  
Id.
 at 481.

 

The common fund doctrine generally applies only in limited types of cases including probate and class actions.  
See
 
First Int’l Bank & Trust v. Peterson
, 2011 ND 87, ¶ 24, 797 
N.W.2d
 316.

[¶31] The parties do not cite, nor have we found, any case law directly on point either approving or disapproving application of the common fund doctrine under these circumstances.  Rather, the parties point to cases in which attempts have been made to invoke the common fund doctrine in situations involving hospital liens.  The vast majority of courts hold that, “while parties who depend on the outcome of the litigation to recover their share of the funds are required to share in the costs of the litigation, hospital lien creditors are entitled to payment regardless of the outcome of the litigation and therefore are not required to share in the litigation costs.”  
LaBombard v. Samaritan Health Sys.
, 991 P.2d 246, 254 (Ariz. Ct. App. 1998); 
see also
 Restatement (Third) of Restitution and Unjust Enrichment § 29, Illustration 14 at 439 (2011).  In 
Wendling v. Illinois Hosp. Servs.
, 950 N.E.2d 646, 649-50 (Ill. 2011), the Illinois Supreme Court recently adhered to the majority rule and noted the current state of the law on the issue:

[T]he majority of other states to decide this issue are in agreement that a hospital is not required to pay its share of attorney fees incurred in creating a fund from which the hospital’s lien is paid.  See Robert L. Rossi, Attorneys’ Fees, 3d § 7:20 (2002); Carol A. Crocca, Annotation, 
Construction, operation, and effect of statute giving hospital lien against recovery from tortfeasor causing patient’s injuries
, 16 A.L.R.5th 262 (1993); 
Mitchell v. Huntsville Hospital
, 598 So.2d 1358, 1360-62 (Ala. 1992); 
City & County of San Francisco v. Sweet
, 12 Cal. 4th 105, 48 Cal.Rptr.2d 42, 906 P.2d 1196, 1203-04 (1995); 
Trevino v. HHL Financial Services, Inc.
, 945 P.2d 1345, 1348-50 (Colo. 1997); 
Hospital Board of Directors v. McCray
, 456 So. 2d 936, 939 (Fla. Dist. Ct. App. 1984); 
Watts v. Promina Gwinnett Health System, Inc.
, 242 Ga. App. 377, 530 S.E.2d 14, 17 (2000); 
Kenneth F. White, Chtd. v. St. Alphonsus Regional Medical Center
, 136 Idaho 238, 31 P.3d 926, 931-

32 (2001); 
National Insurance Ass’n v. Parkview Memorial Hospital
, 590 N.E.2d 1141 (Ind. Ct. App. 1992); 
Broadlawns Polk County Hospital ex rel. Fenton v. Estate of Major
, 271 
N.W.2d
 714, 716-17 (Iowa 1978); 
Harlow v. Lloyd
, 15 Kan. App. 2d 497, 809 P.2d 1228, 1230-32 (1991); 
Mena v. Muhleisen Properties
, 652 So. 2d 65, 69 (La. Ct. App. 1995); 
Sisters of Charity of Providence of Montana v. Nichols
, 157 Mont. 106, 483 P.2d 279 (1971); 
Hillcrest Medical Center v. Fleming
, 643 P.2d 868, 869-70 (Okla. Civ. App. Div. 1982); 
Bashara v. Baptist Memorial Hospital System
, 685 S.W.2d 307, 310-11 (Tex. 1985); 
Lynch v. Deaconess Medical Center
, 113 Wash. 2d 162, 776 P.2d 681, 683-84 (1989).  But see 
Alaska Native Tribal Health Consortium v. Settlement Funds Held for or to Be Paid on Behalf of E.R.
, 84 P.3d 418, 431-35 (Alaska 2004) (holding that a hospital is liable for its 
pro rata
 share of attorney fees pursuant to the common fund doctrine); 
In re Guardianship & Conservatorship of Bloomquist
, 246 Neb. 711, 523 
N.W.2d
 352, 360 (1994) (same) (abrogated by amendment to Neb. Rev. Stat. § 52-401 (Reissue 1998)); 
Martinez v. St. Joseph Healthcare System
, 117 N.M. 357, 871 P.2d 1363, 1366-67 (1994) (same).

 

[¶32] The Haydens and the law firm rely on another Illinois case, 
Bishop v. Burgard
, 764 N.E.2d 24 (Ill. 2002), to support their position.  In 
Bishop
, the plaintiff was injured in an automobile accident, retained counsel and filed a personal injury action, and the plaintiff’s employer’s ERISA Plan asserted a lien for the amount of medical expenses paid on behalf of the plaintiff.  
Id.
 at 27-28.  The ERISA Plan agreement’s subrogation provisions allowed the Plan to recover 100 percent of the benefits paid under a judgment or settlement, and the Plan had the right to sue on the plaintiff’s behalf.  
Id.
 at 28.  The plaintiff’s attorney obtained a settlement and the court ruled the common fund doctrine applied to the Plan’s subrogation lien requiring reduction of the lien by one-third to reflect its share of attorney fees.  
Id.
 at 34.  The 
Wendling
 court, however, distinguished the subrogation lien involved in 
Bishop
:

In contrast to the ERISA Plan in 
Bishop
, the Hospitals were not unjustly enriched because their claims were not contingent on the plaintiffs’ rights against a third party or the creation of a fund.  The Hospitals’ claims existed irrespective of the outcome of the personal injury litigation.  The benefit to the Hospitals by having their liens paid under the Act was merely an incidental benefit because the Hospitals’ claims were primarily against the plaintiffs rather than the fund.  In 
Bishop
, the Plan would not have obtained reimbursement if not for the lien.

 

Wendling
, 950 N.E.2d at 651.  The 
Wendling
 court also noted that, “unlike a subrogee or a member of a class action, the Hospitals had no standing to participate in the plaintiffs’ personal injury lawsuits, nor could they bring independent causes of action against the tortfeasors.”  
Id.
  The court further noted “[b]ecause the attorneys obtained the funds for the plaintiffs’ benefits, regardless of the Hospitals’ interests, the plaintiffs and the Hospitals are not similarly situated with respect to the fund and do not share the same interests in the fund.”  
Id.
 at 652.

[¶33] The circumstances in this case are more analogous to those in 
Wendling
, which follows the majority rule, rather than to those circumstances present in 
Bishop
.  We agree with the majority rule, and further conclude the Haydens cannot evade its application by relying on their status as third parties who gratuitously undertook some of Todd Hayden’s responsibilities.  As we indicated earlier, for purposes of analysis the Haydens can occupy no position superior to that held by Todd Hayden, who incurred the debts to the medical providers.  The medical providers here were not unjustly enriched because they were entitled to full payment for medical services provided to Todd Hayden.  Reimbursement of those expenses was not solely dependent upon the federal court action against BCBSTX, because the medical providers could have pursued reimbursement directly from Todd Hayden.  The law firm obtained the insurance proceeds not for the benefit of the medical providers but for the benefit of its clients who hired the law firm to attempt to compel BCBSTX to provide medical insurance coverage.  The medical providers received an incidental benefit in this case.  We conclude the district court correctly ruled the common fund doctrine does not apply.

[¶34] We conclude the district court did not err in dismissing the claim based on the common fund doctrine as a matter of law.

III

[¶35] It is unnecessary to address other issues raised because they are either unnecessary to the decision or are without merit.  The summary judgment is affirmed.

[¶36] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.